The TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,

v.

Edward E. JONES, Appellee.

No. 19119.

United States Court of Appeals
Fifth Circuit.

Jan. 12, 1962.

Gerry N. Wren, Dallas, Tex., for appellant.

Warren Burnett and Lee Arnett, Odessa, Tex., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This FELA [1] case raises but two questions of any real substance. The first concerns the sufficiency of the evidence to support the implied finding of a failure to keep a proper lookout. The second is whether the Court properly charged the jury concerning the basic defense that Jones, the injured employee, was a mere volunteer not acting in the scope of his employment at the time of his injury. We find no error and affirm.

Admittedly, at the time of his injury, Jones was not performing his customary job. He was, in an everyday sense, acting as a volunteer in doing something he did not normally do in order to assist a fellow employee of the railroad. But in performing this act beyond the strict call of duty, it does not necessarily follow that he forfeited his status as an employee. Jones regularly worked in a communications department as a telephone maintainer. His usual work, however, was in the simple, routine construction, installation, maintenance and repair of electrical equipment in residential and similar buildings. His immediate supervisor was Greer. On the date of the accident Jones and Greer went to Odessa, Texas, to install a pole light on the station premises. To do this Greer, for the Railroad, arranged to borrow from the T&P affiliate, Motor Transport Company, a flatbed truck equipped with a power winch and a collapsible A-frame gin pole derrick. The derrick truck was used to set the light pole. The pole was thereafter set, the work finished and nothing remained for Jones and Greer to do save wait for dark to test the electronic-eye switching device. The derrick truck and the pickup truck being used by Greer's crew were then parked rear-end-to the loading dock and about ten feet apart.

While idling away time, Jones was sitting at the wheel of the pickup truck and

1. 45 U.S.C.A. § 51 et seq.

Greer was engaged on the opposite side in some paper-work. About this time another Railroad supervisor instructed McCue, likewise a Railroad employee, to lower the A-frame gin pole and return the truck to the Motor Company. It was during this process that Jones was severely injured when one leg of the A-frame fell on his head.

Much of the difficulty of the Railroad stems from its unwillingness to recognize that credibility choices were open to, and resolved by, the jury verdict for Jones. That simplifies it considerably. Crediting Jones' version as the verdict does, it presented this uncomplicated situation. Jones was seated in the pickup truck. He saw McCue attempt to push the A-frame forward toward the cab of the truck so it would come to rest on the "headache" bar just behind the cab. However, the wire cable which ran from the power winch through a snatch block at the read end of the truck bed and then up through a block at the apex of the A-frame was hooked in such a way that the A-frame could not be pushed forward. McCue had attempted to slack-off on the winch drum, but not enough. About this time Jones told McCue what had to be done and then got up onto the truck bed to help. With McCue controlling the winch from the truck cab, Jones paid off some more of the wire cable so that the hook could be freed. He then called out for McCue to cut off the power. At that moment there was a lurch causing the heavy steel pipe legs to be jerked forward falling on Jones.

 Little need be said of the first question concerning lookout. Lookout is a broad and inclusive term. Once the jury rejected McCue's version that he did not know Jones was on the truck bed pulling on the wire cable, it was quite permissible to infer that the injuries came from a failure on McCue's part to take proper regard of Jones' safety knowing (as the jury verdict imputed to him) that Jones was there and in a position of such danger as to require care in the further movement of the power winch.

As to the second question concerning status as an employee versus volunteer, the criticism is confined to the jury charge.[2] No contention is now made that a directed verdict ought to have been granted on this score.

It is not easy to discern just what the Railroad thinks is objectionable either as formally stated in the exceptions or in the more detailed exploration of it in brief and on oral argument. Part [1] is acknowledged to be correct as are [2] and [3]. Complaint is made as to [4]

2. To simplify discussion of the Railroad's complaints, the numbers in brackets have been inserted:

"You are further instructed that under the Federal Employers' Liability Act, [1] the railroad owes no duty to protect the plaintiff or its other employees in a place where such employees were not required to be in the performance of the duties which he owes to the railroad as its employee. [2] In this connection, you are instructed that before the plaintiff can recover as against the defendant herein, he must show that at the time of the accident he was acting within the scope of employment, and in a place where his duty as an employee required him to be, and unless it is proven by a preponderance of the evidence that at the time of the accident plaintiff was performing some act or service which his duty required, and at a place where his duty required him to be, then you will find for the defendant. [3] In this connection you are also instructed that the defendant contends that the plaintiff was not in the course of his employment at the time he was injured.

 "You are instructed that once it has been established, that a plaintiff, under the Federal Employers' Liability Act, has become an employee he does not lose his status as an employee when he leaves his precise place of work and does other acts which are incidental to his general employment. [5] Further, you are instructed that an employee does not cease to be in the scope of his employment merely because he is not doing some specifically prescribed task, if in the course of his work he does some act which might reasonably have been foreseen by his employer, which he deems necessary for the benefit or in the interest of his employer."

and [5] in several ways. The principal one drawn out by oral argument was in the physical sequence of these parts. Thus, the Railroad asserts, the positive command of parts [1], [2] and [3] were somehow materially lessened so that it would have been preferable to have [4] and [5] come first. In this criticism the Railroad, at least momentarily, accepts parts [4] and [5] as essentially correct in content.

■ We see no such fault. Bearing in mind that neither judge nor jury can contrive, communicate or assimilate complex knowledge with the superhuman speed of a data computer, Thermo King Corp. v. White's Trucking Service, Inc., 5 Cir., 1961, 292 F.2d 668, the law as it is laid down must perforce come word by word, sentence by sentence. Something has to come first, something last. The thought—complex as it almost invariably will be—is to be judged for its accuracy, its fullness, its balance by the completed expression. The burden then is a heavy one in demonstrating that an error has come about from sequential arrangement of sentences.

■ On more traditional grounds, the Railroad next contends that this was an effectual direction of a finding that Jones was at a *place* called for by his employment, and that he was *acting* in the scope of it. We do not read these simple words in such a complicated fashion, nor could the jury.[3] Parts [1], [2] and [3] emphatically required the injury to arise in the scope of employment. By parts [4] and [5] the jury was told that *if* the conditions therein discussed were found to exist, then the jury could find that the injury occurred in the employment. This was neither a partial direction of a jury finding,[4] an unbalanced, overemphasized comment on the weight of the evidence, or a withdrawal from jury consideration of pertinent significant testimony.[5]

■■ Finally, it is urged specifically that there was no definition of the term "general employment" as that is used in part [4] and perhaps implied in part [5] in the phrase "some specifically prescribed task." We think the meaning of this is quite plain as referring here to Jones' work as a telephone maintainer in the communications division. Terms of this character are to be used in their natural sense, Hull v. Philadelphia & Reading Ry. Co., 1920, 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670, and that ordinarily ought to mean, as it certainly does here, common sense.[6]

3. If there were any doubt, it was certainly dispelled by this subsequent categorical direction:

"You are further instructed that if the plaintiff voluntarily or of his own free will, and not acting within the scope of his employment, as the Court has heretofore instructed you, undertook to assist in the lowering of the A-frame upon such winch truck, you will find for the defendant. * * *."

4. The Railroad emphasizes United States v. Raub, 7 Cir., 1949, 177 F.2d 312.

5. The railroad strenuously urges these cases. Clement v. Packer, 1888, 125 U.S. 309, 8 S.Ct. 907, 31 L.Ed. 721; McCoy v. Blakely, 8 Cir., 1954, 217 F.2d 227; Virgiman Railway Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 4 A.L.R. 2d 1064; Starr v. United States, 1894, 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841; Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Grounds v. Roth, 10 Cir., 1954, 210 F.

2d 239; Crowe v. DiManno, 1 Cir., 1955, 225 F.2d 652; Rio Grande W. Ry. Co. v. Leak, 1896, 163 U.S. 280, 16 S.Ct. 1020, 41 L.Ed. 160.

6. We have repeated it thus: "The test for the correctness of an instruction does not lie in the indulgence which a lawyer in his office with the aid of his books, or the trial and appellate courts with the benefit of briefs and arguments of counsel, give to instructions, but as to how the instructions will naturally be understood by the average men composing juries." Government Employees Insurance Co. v. Davis, 5 Cir., 1959, 266 F. 2d 760, 765. Judge Wyzanski has put it with more color: "[T]he object of a charge to a jury is not to satisfy an appellate court that you have repeated the right rigmarole of words, but to try to make jurors who are laymen understand what you are talking about." Cape Cod Food Products, Inc. v. National Cranberry Ass'n, D.C.D.Mass., 1954, 119 F. Supp. 900, 907.

**192**

■ Except for these criticisms, the Railroad did not challenge the substantive content of the Court's charge on the status of volunteer versus employee. In the light of this we do not find it necessary or appropriate to explore the full reaches of the problem of the volunteer act in an FELA situation. The test laid down by the trial court was an objective one which the Railroad, as an employer, "might reasonably have * * * foreseen * * *" and which the employee reasonably thought "necessary for the benefit or in the interest of his employer." [7] A willing spirit of cooperative helpfulness in which employees pitch in to advance the interest of their mutual employer is conducive to good employer-employee relations. These should not be thwarted by a niggardly application of the statute by which, out of a proper concern on the part of an employee whether protection would exist, might lead a cooperative employee to be reluctant to offer help to fellow employees apparently in need of assistance.

■ The other errors urged may be swiftly rejected. The attack that the charge allowed the jury to return a verdict for Jones on a finding of his own negligence borders on the frivolous. So does the criticism defining the burden of proof to be "the greater weight *of* the preponderance of the evidence." So inconsequential was this likely slip-of-the-tongue or slip-of-the-reporter's-pen (writing the hieroglyphic for "of" instead of "or") that it completely slipped the attention of the astute counsel for the Railroad. His exception was an afterthought made long after the trial was over. Moreover, if the error as uttered meant nought to him, it would be curious to ascribe to the jury a greater wisdom on this fine point of law.

The case was a swearing•match between Jones and McCue on what hap-

pened and why. That was for the jury to resolve both on questions of liability *vel non* and on the status of volunteer versus employee. There it ends.

Affirmed.

---

7. The instructions given here find explicit support, for parts at least, in several cases. Casey v. Hansen, Iowa, 1947, 238 Iowa 62, 26 N.W.2d 50; Bushing v. Iowa Ry. & Light Co., 1929, 208 Iowa 1010, 226 N.W. 719; Associated Employers' Reciprocal v. State Industrial Commission, 1921, 82 Okl. 229, 200 P. 174; Oklahoma Ry. Co. v. Cannon, 1946, 198 Okl. 65, 176 P.2d 482.