United States Court of Appeals,

Fifth Circuit.

No. 96-10913.

Michael SMITH;  Amanda Kathryn Smith; Melissa Ann Smith, Plaintiffs-Appellants,

v.

MEDICAL AND SURGICAL CLINIC ASSOCIATION, doing business as Medical and Surgical Clinic Association, doing business as Advance Occupational, doing business as Advance Occupational; et al., Defendants,

Burlington Northern Railroad Company, Defendant-Appellee.

July 31, 1997.

Appeals from the United States District Court for the Northern District of Texas.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant Michael Smith collapsed and suffered a head injury after receiving a flu shot administered under the auspices of his employer, Burlington Northern Railroad Co. Smith brought this statutory negligence action against Burlington Northern under the Federal Employers' Liability Act ("FELA" or "the Act"), 45 U.S.C. §§ 51-60.  The district court granted summary judgment for the railroad, finding that Smith had failed to produce evidence that his injury occurred within the scope of his employment, as FELA requires.  We hold that a genuine issue of material fact exists on this question, and therefore reverse and remand.

I.

It is undisputed for purposes of this appeal that Burlington Northern arranged for employees at its Fort Worth, Texas, office

building to receive influenza vaccines in the fall of 1993. It is also undisputed that the flu shots were given on company premises, during work hours, at no charge to the employees. Appellant was a Burlington Northern manager who took part in the inoculation program, receiving a flu shot on September 28, 1993. The shot was given on the twenty-sixth floor of the Burlington Northern building. After returning to the fifteenth floor, where his office was located, Smith collapsed and struck his head. He claims that the injury caused him to become permanently disabled.

Burlington Northern distributed two fliers to its employees regarding the vaccination program. Smith conceded in his deposition testimony that the flu shots were voluntary, but stated that he felt strongly encouraged to accept a flu shot by the company's fliers. Smith also testified that about two years previously he had missed work because of a severe case of the flu, and that he felt obligated as a good employee to submit to inoculation to avoid another absence.

Viewing the evidence in the light most favorable to Smith, it is clear that Burlington Northern planned, administered, and promoted the flu shot program. The record reflects that the railroad engaged a health clinic to vaccinate its employees at its Fort Worth offices.[1] The record also reflects that any employee

_____

[1]Smith's flu shot was given by a registered nurse employed by Medical and Surgical Clinic Association, d/b/a Advanced Occupational Health Care ("AOHC"). Smith's complaint named the clinic as a defendant; it also named Dr. Thomas V. Mears, a Burlington Northern vice president who helped initiate the flu shot program. Smith does not appeal the district court's grant of summary judgment in favor of AOHC and Dr. Mears.

who was unable to attend a vaccination session on company premises would be excused from work to receive a flu shot at the health clinic.

Smith argues that based on this record, a jury could find that Burlington Northern actively encouraged participation in the flu vaccine program, and moreover, that the company was motivated to do so, at least in part, by a self-interested desire to reduce absenteeism. At the very least, he contends that a jury could find that an employee in his position might reasonably believe that the flu shot program was intended to reduce sick time, increase productivity, and improve Burlington Northern's bottom line. As discussed below, whether Smith was acting in the scope of his employment when he accepted a flu shot depends on whether he might reasonably have thought doing so would serve Burlington Northern's interests.

## II.

We review the district court's grant of summary judgment *de novo,* applying the same standard as the district court. *Thomas v. N.A. Chase Manhattan Bank,* 1 F.3d 320, 323 (5th Cir.1993) (citation omitted); *Unida v. Levi Strauss & Co.,* 986 F.2d 970, 975 (5th Cir.1993) (citation omitted). Summary judgment is proper if the pleadings and the record evidence, including affidavits and deposition testimony, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage we view the evidence in the light most favorable to the party

3

opposing the motion and draw all reasonable inferences in that party's favor. *Thomas,* 1 F.3d at 323 (citation omitted); *Unida,* 986 F.2d at 975 (citations omitted). Nevertheless, summary judgment is appropriate if the non-moving party fails to adduce sufficient evidence to establish an essential element of his claim on which he bears the burden of proof at trial. *Unida,* 986 F.2d at 975-76 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

### III.

FELA provides that "every common carrier by railroad" engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce" where the injury arises from the negligence of the railroad's officers, agents, or employees. 45 U.S.C. § 51. FELA affords railroad employees their only remedy for injuries sustained while engaged in interstate commerce. *See New York Cent. R. Co. v. Winfield,* 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917). To prevail under the Act, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence. *Fowler v. Seaboard Coastline R.R. Co.,* 638 F.2d 17, 19 (5th Cir. Unit B February 1981) (citing 45 U.S.C. § 51).

The only issue in this appeal is the third element, which

4

requires proof that the plaintiff was injured in the scope of his employment. *See Wilson v. Chicago, Milwaukee, St. Paul, & Pac. R.,* 841 F.2d 1347, 1351 (7th Cir.1988) (citations omitted). FELA's "scope of employment" requirement has been interpreted broadly. It is not limited to acts required or coerced by the employer. Rather, the scope of employment encompasses "acts incidental to the employment as well as the actual work." *Fowler,* 638 F.2d at 20. In this circuit, "the proper test for scope of employment in a[ ] FELA case [is] whether the act was one which the employer might reasonably have foreseen and which the employee might reasonably have thought necessary in the interest of or in the benefit of the employer." *Id.* at 20 (citing *Texas & Pac. Ry. v. Jones,* 298 F.2d 188 (5th Cir.1962)).

Federal courts have held that FELA claimants were acting within the scope of their employment while eating lunch on company property; sleeping in accommodations provided by the employer during a layover necessitated by railroad work; or riding in a vehicle (but not commuting to or from work) when doing so is a "necessary incident of [the] day's work." *Rogers v. Chicago & North Western Transp. Co.,* 947 F.2d 837 (7th Cir.1991) (citing *Fowler,* 638 F.2d at 20; *Mostyn v. Delaware, L. & W.R. Co.,* 160 F.2d 15, 17-18 (2d Cir.), *cert. denied,* 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947); *Wilson,* 841 F.2d at 1355). *Accord Jones,* 298 F.2d at 192 (employee injured while voluntarily assisting another employee); *Morris v. Pennsylvania R.R. Co.,* 187 F.2d 837, 841 (2d Cir.1951) (employee killed while crossing tracks on his way to work

at defendant's freight yard).

At the opposite pole, "purely private activity totally unrelated to the employment" is not within the scope of employment. *Fowler,* 638 F.2d at 20.  Put another way, FELA "cannot be extended to cover activities not necessarily incident to or an integral part of employment in interstate commerce.  It obviously does not cover activities undertaken by an employee for a private purpose and having no causal relationship with his employment." *Id.* (quoting *Atchison, T. & S.F. R. Co. v. Wottle,* 193 F.2d 628, 630 (10th Cir.), *cert. dismissed,* 344 U.S. 850, 73 S.Ct. 89, 97 L.Ed. 661 (1952)).  Thus, the family of an employee who was fatally injured while riding his motorcycle on railroad property during a lunch break could not recover under the Act.  *Id.* 638 F.2d at 20.

Both parties accept the principles articulated in *Fowler* as the governing legal standards.  Our task is simply to apply these principles to the summary judgment evidence.  To help narrow our inquiry, we reiterate that under *Fowler,* an activity falls within the scope of employment if (1) the employer might reasonably have foreseen it and (2) the employee might reasonably have thought it necessary for the employer's benefit.

IV.

Burlington Northern does not argue that Smith's participation in the flu shot program was unforeseeable.  Rather, the issue is whether an employee such as Smith might reasonably have thought it necessary to accept a flu shot for the benefit of Burlington Northern.  If a jury could reasonably answer that question

6

affirmatively, summary judgment is inappropriate. On the other hand, if a reasonable employee must have realized that the flu shots were purely gratuitous private benefits, summary judgment was proper. The question, in other words, is whether Smith's flu shot and ensuing injury bore some "causal relationship" to his employment, or whether his vaccination was "a purely private activity totally unrelated to the employment." *Fowler,* 638 F.2d at 20.

As we have already observed, Burlington Northern planned, administered, paid for, and (arguably) promoted the vaccination program. In addition, Smith submitted evidence which he contends raises an inference that the railroad was motivated by a desire to reduce absenteeism—or at least, that it was reasonable for him to have thought so. This evidence consists of Smith's own affidavit and deposition testimony and copies of two fliers distributed by Burlington Northern to its employees.[2]

In his affidavit, Smith stated that the company offered the flu shots and that his direct supervisor escorted him from his office to receive his vaccination. Smith conceded that he was not required to take a flu shot, but stated, "I felt strongly encouraged to do so as a "good' employee."

---

[2]The railroad downplays Smith's testimony by describing it as "self-serving." In our adversarial system, self-serving statements are neither unusual nor inherently suspect. It remains for the jury to decide whether Smith's statements are credible and whether they give rise to the inferences urged by Smith: that Burlington Northern encouraged employees to avail themselves of the flu vaccinations and that an employee could reasonably have concluded that the company did so for its own benefit.

In his deposition testimony, Smith stated that he felt obligated to submit to a flu shot because about two years previously he had missed work because of a severe case of the flu. He stated, "I ... felt that it was important, in order for me to be a good employee and to avoid losing that kind of productivity, for me to become vaccinated."

The first of the Burlington Northern fliers in the summary judgment record announced, "TIME FOR 1993 FLU SHOTS." It stated that vaccines would be available to all employees who chose to sign up for them.[3] The second flier bore the headline, "ROLL UP YOUR SLEEVE AND BE BRAVE." It stated that flu vaccines would be given free of charge to all employees who had previously signed up to receive them. It also stated that employees who were unable to attend one of the scheduled vaccination sessions on the premises would be authorized to receive their flu shots at the clinic.

Burlington Northern correctly points out that Smith adduced no evidence that the company was actually motivated by self-interest.[4] However, *Fowler* does not require evidence of the employer's actual motivation. Under Fowler, Smith need only produce evidence to

---

[3]The same flier included descriptions of flu symptoms, the vaccine, and possible side effects, as well as a warning that certain employees should check with their physicians before being vaccinated. Burlington Northern contends that the qualifying language in the flier belies Smith's claim that employees were encouraged to undergo inoculation.

[4]Smith cites the deposition testimony of Dr. Thomas V. Mears, the Burlington Northern vice president who helped initiate the flu shot program, as evidence that the railroad was motivated by a desire to reduce absenteeism during flu season. To the contrary, Dr. Mears testified that the vaccinations were intended merely as a convenience for the railroad's employees.

support the inference that he might reasonably have thought that flu shots were offered in part for the company's benefit.

Based on the summary judgment evidence, a genuine issue exists as to whether an employee might reasonably have believed that the flu shots were administered, in part, for Burlington Northern's benefit. The company developed, administered, and (viewing the evidence in the light most favorable to Smith) promoted the vaccination program. Moreover, the company announced that employees unable to attend the vaccination sessions at the Burlington Northern office building would be excused from work to receive flu shots at the AOHC clinic. Also, the fact that Smith's supervisor accompanied him to the vaccination site might possibly tend to support an inference that the company had an interest in its employees being inoculated. In sum, we think a rational jury could infer that an employee in Smith's position "might reasonably have thought [the flu shots] necessary in the interest of or in the benefit of the employer." *See Fowler,* 638 F.2d at 20.

V.

It may well be that in arranging and paying for the 1993 flu shot program, Burlington Northern was motivated entirely by a humane concern for the welfare of its employees. However, it is no secret that illnesses such as the flu cost American corporations billions of dollars annually in lost productivity and medical insurance expenses. The railroad's decision to provide its employees with free flu shots is no less commendable if it was motivated by enlightened self-interest. Nevertheless, under FELA,

9

if an employee might reasonably have thought that accepting a flu shot was necessary for the benefit of Burlington Northern, then submitting to inoculation was an act within the scope of employment. We think the evidence adduced by Smith precludes summary judgment on this question.

We conclude that summary judgment against Smith on the "scope of employment" issue was unwarranted. The order of the district court is REVERSED and the case REMANDED.