**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 97-40784**

_____

**RICHARD K. WEAVER,**

**Plaintiff-Appellee,**

**versus**

**MISSOURI PACIFIC RAILROAD COMPANY, Doing Business as
Union Pacific Railroad Company; ET AL.,**

**Defendants,**

**MISSOURI PACIFIC RAILROAD COMPANY, Doing Business as
Union Pacific Railroad Company; UNION PACIFIC RAILROAD COMPANY,**

**Defendants-Appellants.**

**Appeal from the United States District Court
for the Southern District of Texas**

**August 21, 1998**

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether compliance with the Locomotive Inspection Act, 49 U.S.C. § 20701 _et. seq._ (LIA)(formerly the Boiler Inspection Act, 45 U.S.C. § 23 _et seq._), and regulations promulgated thereto, regulating locomotive cabin conditions, precludes finding negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 _et seq._ Because the district court did not err in allowing the jury to consider such negligence, we **AFFIRM.**

Richard Weaver was employed by Missouri Pacific Railroad as the engineer of a train on the night of 12 June 1996; it was very warm and humid. Because his locomotive did not have air conditioning, Weaver opened the window in the cab.

As the train approached Pinehurst, Texas, Weaver noticed a person standing in the tracks. After the person jumped to avoid the train, Weaver, using one hand to blow the horn and the other on the emergency brake valve in anticipation of stopping the train, turned to see if the person had been hit. As Weaver was doing so, Einar Ristroph threw a bottle through the open window, striking Weaver in the head and rendering him unconscious.

Weaver and his wife filed this action against Missouri Pacific d/b/a Union Pacific Railroad and Union Pacific Railroad (collectively, the Railroad), claiming that, under the FELA, the Railroad was negligent in failing to provide a safe place to work; to warn of the danger that Ristroph posed; to provide air conditioning for the locomotive; and to arrange the configuration of locomotives on the train, so that the lead locomotive was equipped with air conditioning. They also claimed violation of the LIA, and the regulations promulgated under it, and presented state law claims against Union Pacific and Ristroph.

In May 1997, in response to the Railroad's summary judgment motion, the district court ruled that Union Pacific was Weaver's

employer; FELA, his exclusive remedy against it. Consequently, all of Weaver's other claims were dismissed.  And, because Mrs. Weaver was not a proper FELA plaintiff, her claims against Union Pacific were dismissed.

And, concerning Weaver's FELA claims based upon lack of air conditioning, protective screens, and ditch lights, the Railroad had claimed preemption by the LIA. The district court denied summary judgment on procedural grounds.

At trial, the Railroad moved for judgment as a matter of law, pursuant to FED. R. CIV. P. 50, contending, again, that Weaver's FELA claims were preempted by the LIA; or, at a minimum, that the allegations could not form the basis for an LIA claim. Subsequently, Weaver's motion to dismiss all of the claims arising out of the LIA was granted.  Only his FELA claim was considered by the jury.

Prior to the jury returning a verdict, Weaver and the Railroad entered into a settlement agreement, approved by the district court.  It provided that, *inter alia*, if the jury returned a verdict exceeding $749,000, Weaver's recovery was limited to $750,000, subject to appeal by the Railroad on the issue stated *infra*.

The jury found in favor of Weaver, awarding him $1,591,000, and attributing 95% fault to the Railroad and 5% to Ristroph.

## II.

As limited by the settlement agreement, and stated in the district court's amended judgment, the sole issue is whether "the District Court erred in allowing the jury to consider the question of whether the [Railroad] was negligent in not equipping its locomotive with air conditioning *and/or screens* because the jury's consideration of such conduct is *preempted* by the Locomotive Inspection Act (Boiler Inspection Act)". (Emphasis added.) We review *de novo* the denial of judgment as a matter of law, viewing all the evidence in the light most favorable to the non-movant. *E.g., **Hileman v. City of Dallas, Tex.***, 115 F.3d 352, 353 (5th Cir. 1997).

For starters, the Railroad concedes that the preemption doctrine is not at issue; we are addressing the interaction of two federal statutes. *Cf.* ***Texas Manufactured Housing Ass'n v. City of Nederland***, 101 F.3d 1095, 1099 (5th Cir. 1996) (Congress may expressly or implicitly preempt state law), *cert. denied,* 117 S. Ct. 2497 (1997). We also note that, in its appellate brief, the Railroad fails to address protective screens, and instead focuses solely on air conditioning.

The FELA provides, in relevant part:

> Every common carrier by railroad engaging in [interstate commerce] shall be liable in damages to any person suffering any injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or

> employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, [and] engines....

45 U.S.C. § 51.

"[T]o prevail under [FELA], a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." **Smith v. Medical and Surgical Clinic Ass'n**, 118 F.3d 416, 419 (5th Cir. 1997) (citing **Fowler v. Seaboard Coastline R.R. Co.,** 638 F.2d 17, 19 (5th Cir. Unit B February 1981)), *cert. denied*, 118 S. Ct. 1034 (1998). "What constitutes negligence for [FELA'S] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." **Urie v. Thompson**, 337 U.S. 163, 174 (1949).

The Railroad contends that the LIA and its regulations regarding locomotive cabin temperature and ventilation conditions "totally occup[y] the field" of locomotive safety, pretermitting liability under FELA for not installing the air conditioners and/or protective screens.

The LIA provides, in relevant part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.

Pursuant to the LIA, the Federal Railroad Administration promulgated regulations establishing standards for locomotives. The regulations at issue provide, in part: "[c]ab windows of the lead locomotive shall provide an undistorted view of the right-of-way for the crew from their normal position in the cab", 49 C.F.R. § 229.119(b); and "[t]he cab shall be provided with proper ventilation and with a heating arrangement that maintains a temperature of at least 50 degrees Fahrenheit 6 inches above the center of each seat in the cab", 49 C.F.R. § 229.119(d)(1998). The regulations do *not* require air conditioning and/or protective screens.

The Railroad contends that, having complied with the regulations regarding temperature and windows, and in that those regulations do not require air conditioning and/or protective

screens, its conduct cannot be considered negligent. In other words, because the Railroad complied with these regulations, then, according to the Railroad, the district court erred by allowing the jury to consider negligence under FELA.

Interpreting the LIA's predecessor, the BIA, our court has stated that it "'is a safety statute which is to be liberally construed to afford protection to railroad employees'". *Gregory v. Missouri Pacific R.R. Co.*, 32 F.3d 160, 161 (5th Cir. 1994) (quoting *Oglesby v. Southern Pacific Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993)). Moreover, commenting in *Urie* on the relationship between the FELA and the BIA, the Supreme Court stated:

> [T]he Safety Appliance Acts, together with the Boiler Inspection Act, are substantively if not in form amendments to the Federal Employers' Liability Act. They dispense, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violations is effective to show negligence as a matter of law. Thus taken, as has been the consistent practice, the Boiler Inspection Act ... cannot be regarded as [a] statute[] wholly separate from and independent of the Federal Employers' Liability Act. They are rather supplemental to it, having the purpose and effect of facilitating employee recovery, not of restricting such recovery or making it impossible.

*Urie*, 337 U.S. at 1034.

Weaver asserted in his complaint that the Railroad should have provided him with air conditioning and/or protective window screens to protect him from *known dangers*. He presented evidence at trial

- 7 -

that, during the period 1992-1996, there were *698 reported shootings or stonings* of Union Pacific Railroad locomotives, with the greatest frequency from April through September. At the time of Weaver's injury, it was 90 degrees and very humid. And, at that time, approximately 1000-1500 of the Railroad's 4500 locomotives were equipped with air conditioning.

The LIA regulations relied upon by the Railroad are *not* premised on providing safety from such dangers; rather, their focus is on ensuring proper ventilation, a minimum temperature, and an undistorted view. *See* 49 C.F.R. § 229.119(b)(d)(1998). Restated, compliance with these regulations, in the light of the evidence presented at trial regarding the known dangers presented to locomotive engineers traveling through the southern States in the summer, does *not* address the safety of those engineers from known dangers, such as stonings. In sum, in this regard, the LIA and accompanying regulations do *not* totally occupy the field regarding locomotive safety.

Accordingly, on the facts in this case, compliance with the LIA and the accompanying regulations is not determinative of negligence under FELA. *See e.g., **Mosco v. Baltimore & Ohio R.R.,*** 817 F.2d 1088, 1092 (4th Cir.), *cert. denied,* 484 U.S. 851 (1987) (Although plaintiff had no viable BIA claim, "it is possible that he might have stated a meritorious FELA claim based on the same facts."). Therefore, on these facts, the district court did not

- 8 -

err in allowing the jury to consider, under FELA, whether the Railroad was negligent in not equipping its locomotive with air conditioning and/or protective screens.

## III.

For the foregoing reasons, the judgment is

*AFFIRMED.*