Wayne R. ELSTON, Plaintiff–Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, Defendant–Appellee.

No. 02CA0766.

Colorado Court of Appeals, Div. III.

May 22, 2003.

Rossi, Cox, Kiker & Inderwish, P.C., John J. Rossi, Paul F. Byrnes, Aurora, Colorado, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Alan Epstein, Frederick T. Martinez, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this negligence action brought pursuant to the Federal Employers' Liability Act (FELA), plaintiff, Wayne R. Elston, appeals from the trial court's entry of summary judgment in favor of defendant, Union Pacific Railroad Company. We reverse and remand.

Plaintiff was employed by defendant as a locomotive engineer. He was called on duty to relieve another crew member who had exhausted his maximum allowable work hours. Upon arriving at Adams Siding, where the train was being held, plaintiff was assigned to repair a problem with the train's remote locomotives, called "consists," which were not responding to radio commands from the controlling locomotive. After discussing the problem and actions taken by the original train crew, plaintiff concluded that it was necessary to replace the controlling locomotive.

After replacing the locomotive, plaintiff walked alongside the tracks to the rear of the train to enter the new locomotive code number into the remote consists. It was necessary for plaintiff to walk, rather than drive, to the rear of the train because the snowy conditions precluded defendant's maintenance vehicle from driving alongside the tracks. After making the necessary inputs, plaintiff began walking toward the front of the train. He then slipped and fell on the steeply pitched, snow-covered roadbed structural material, called "ballast," and thereby suffered injury to his right knee.

Plaintiff subsequently filed this lawsuit alleging that defendant was negligent under FELA for: (1) failing to provide reasonably safe walkways alongside its mainline tracks; and (2) violating its statutory duty under the Locomotive Inspection Act (LIA) and the Federal Railroad Safety Act (FRSA) to use only locomotives in proper condition and safe to operate without danger of personal injury.

The trial court granted defendant's motion for summary judgment and dismissed the case with prejudice on the basis that plaintiff had provided no evidence that defendant was responsible for adverse weather conditions, unreasonably allowed ice and snow to accumulate, or had the opportunity, but failed to take appropriate corrective action. In addition, the trial court determined that the regulations under other federal statutes preempted plaintiff's FELA claim that defendant failed to provide its employees with a reasonably safe walkway alongside its railroad line. The trial court further concluded that plaintiff's additional claim that defendant had violated several LIA regulations was without merit and unsupported by the evidence. Subsequently, the trial court issued an amended order denying plaintiff's motion for entry of summary judgment in his favor. This appeal followed.

Our review of an order granting a motion for summary judgment is de novo. *See Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo. 1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions,

or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter· of law. *See* C.R.C.P. 56(c); *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007 (Colo. 1992). In reviewing a motion for summary judgment, we must view the allegations in the complaint in the light most favorable to the nonmoving party. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

## I.

■ Plaintiff contends that the trial court improperly invaded the province of the jury by determining as a matter of law that: (1) defendant had satisfied its duty to provide a reasonably safe workplace under FELA; and (2) his LIA claims brought under FELA were without merit. We agree.

## A.

■ FELA is a broad remedial statute designed to be construed liberally so as to effectuate Congress's intent to promote railroad safety. *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). FELA provides the exclusive remedy for a railroad employee to recover damages for injuries resulting from the negligence of his railroad employer. *Lane v. R.A. Sims, Jr., Inc.,* 241 F.3d 439 (5th Cir.2001).

■ Under FELA, a railroad employer is required to provide its employees with a reasonably safe place to work. *See Gadsden v. Port Auth. Trans–Hudson Corp.,* 140 F.3d 207 (2d Cir.1998)(railroad may be held liable under FELA for failure to provide its employees with a reasonably safe work environment when it knows or should have known of a potential workplace risk, yet fails to exercise reasonable care to inform and protect its employees concerning this risk); *Sinclair v. Long Island R.R.,* 985 F.2d 74 (2d Cir.1993).

■ The plaintiff's burden in a FELA action is significantly less than in an ordinary negligence suit, and as a result, it is easier for a plaintiff's FELA claim to survive a summary judgment motion. *See Lisek v. Norfolk & W. Ry.,* 30 F.3d 823 (7th Cir.1994).

■ A FELA plaintiff is not impervious to summary judgment, however. *See Robert v. Consol. Rail Corp.,* 832 F.2d 3 (1st Cir. 1987)(a plaintiff is still required to establish the traditional common law elements of negligence). To survive summary judgment on a FELA claim that a railroad breached its duty to provide a safe workplace, a plaintiff must show circumstances that a reasonable person would foresee as creating a potential for harm and establish that this breach played some part in causing the injury. *McGinn v. Burlington N. R.R.,* 102 F.3d 295 (7th Cir.1996); *see also Rogers v. Mo. Pac. R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)(FELA case should go to the jury if "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury").

■ Foreseeability does not require the employer to have anticipated the plaintiff's injury in the precise manner in which it occurred. It is sufficient if the employer could reasonably foresee that *an* injury might occur. *See Armstrong v. Burlington N. R.R.,* 139 F.3d 1277 (9th Cir.1998). In a close case, the FELA action should be allowed to proceed to trial. *Nichols v. Burlington N. & Santa Fe Ry.,* 56 P.3d 106 (Colo.App.2002); *see also Syverson v. Consol. Rail Corp.,* 19 F.3d 824 (2d Cir.1994)(FELA case must not be dismissed on summary judgment unless there is no reasonable basis for a jury to find for plaintiff).

Here, in his response to defendant's motion for summary judgment, plaintiff asserted that, because defendant often requires its employees to walk the length of the train to make repairs or change train crews, defendant's failure to provide a reasonably safe walkway alongside the train created a foreseeable risk of harm that caused, in whole or in part, his injury. Defendant argues that summary judgment was proper because, as a matter of law, it cannot be held responsible for the accumulation of ice and snow that resulted in plaintiff's injury, and plaintiff failed to show it had actual or constructive knowledge that the section of the railroad track on which plaintiff was injured was un-

safe. We agree with plaintiff that summary judgment was improper.

Under FELA, "normal winter conditions may [provide] sufficient notice to railroad employers about the potential for harm due to a slip and fall on ice or snow." *Vonderhaar v. Soo Line R.R.*, 242 Wis.2d 746, 755, 626 N.W.2d 314, 318 (Wis.Ct.App.2001)(citing *Kimbler v. Pittsburgh & Lake Erie R.R.*, 331 F.2d 383 (3d Cir.1964)); *see also McDonald v. N.E. Ill. Reg'l*, 249 F.Supp.2d 1051 (N.D.Ill.2003) (genuine issue of fact existed as to whether railroad's failure to remove snow constituted negligence). And whether a defendant has actual or constructive knowledge of a potential workplace risk usually is a question of fact for the jury to decide. *See Wahlstrom v. Metro–N. Commuter R.R.*, 89 F.Supp.2d 506 (S.D.N.Y.2000); *see also Rogers v. Mo. Pac. R.R., supra*, 352 U.S. at 510, 77 S.Ct. at 450–51 ("Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury").

Viewing the allegations in the light most favorable to plaintiff, we conclude there is a disputed issue of fact whether defendant satisfied the standard of reasonableness as to the existing and anticipated conditions of the roadbed and ballast, including the icy and snowy condition thereof. *See Gallick v. Baltimore & O. R.R.*, 372 U.S. 108, 118, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963)(a defendant is held to the standard of what is reasonably foreseeable under the same or similar circumstances based upon "what 'in the light of the facts then known, should or could reasonably have been anticipated' ").

Specifically, in its motion for summary judgment, defendant argued that it was not reasonably foreseeable that plaintiff would take "a shortcut along a steep embankment with loose slag and slick, wet, snowy conditions," rather than the longer, but safer route to the front of the train.

In his response to defendant's motion, however, plaintiff offered evidence that: (1) defendant knew or should have known that because the controlling locomotive was not operating properly, there was a strong possibility it would have to be replaced and plaintiff would be required to walk to the rear of the train to enter a new control code into the remote consists; (2) plaintiff could easily have reached the back of the train when it was stopped at Milner, by walking alongside the shoulder of the highway adjacent to the train; (3) defendant had the option of holding the train at Milner until plaintiff arrived to relieve the first crew; (4) defendant nevertheless moved the train from Milner to Adams Siding, where it knew or should have known the rear of the train was not safely reachable because there were no walkways and trains occupied both the main and side tracks, thereby preventing plaintiff from walking down the middle; (5) based on the overnight weather conditions consisting of a mix of rain, snow, and sleet, defendant knew or should have known that plaintiff would be required to walk on the steeply pitched, snow-covered ballast to reach the remote consists; (6) in returning to the front of the train, plaintiff could not retrace the original route he took to reach the remote consists because of defendant's operating rules, which forbid a railroad employee from crossing over the tracks by going through the train; and (7) regardless of which side of the train plaintiff walked on, there were no walkways and the footing was poor.

Thus, there is a disputed issue of material fact whether defendant breached its duty to provide plaintiff with a safe workplace, and the trial court erred in granting summary judgment on this issue.

### B.

The purpose of the LIA is to promote the safety of railroad employees, passengers, and the public at large by requiring the use of safe equipment. The LIA does not confer a right of action upon an injured employee. Rather, it has been construed as an amendment or supplement to FELA, so that proof of a violation under the LIA establishes negligence as a matter of law under FELA. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Thus, a railroad employee who is injured as a

result of an LIA violation may sue under FELA alleging an LIA claim. *See Lilly v. Grand Trunk W. R.R.*, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943); *see also Palmer v. Union Pac. R.R.*, 12 F.Supp.2d 588 (S.D.Tex. 1998)(LIA violation is a separate cause of action from a FELA claim for negligence).

■ Liability under the LIA is absolute and is not dependent on negligence or proof of a defect. *See Norfolk & W. Ry. v. Hiles*, 516 U.S. 400, 116 S.Ct. 890, 134 L.Ed.2d 34 (1996)(Safety Appliance Act (SAA)-FELA plaintiff). Instead, the LIA imposes upon a railroad carrier a continuing duty to maintain its locomotives in proper condition, safe to operate, and without unnecessary danger of personal injury. 49 C.F.R. § 229.7(a)(1).

Additionally, as relevant here, the LIA provides that a railroad carrier shall not use a train in service unless the remote consists are capable of responding to commands from the controlling locomotive, 49 C.F.R. § 229.13, and all systems and components of the locomotive must be free of conditions that would endanger the safety of the crew or the train, 49 C.F.R. § 229.45.

1.

■ Plaintiff offered evidence that: (1) pursuant to the LIA, defendant knew or should have known that because the lead locomotive was not in proper condition or safe to operate, the train could not be moved until the remote consists were able to respond to commands from the controlling locomotive, or until defendant complied with the requirements for moving a noncomplying locomotive, and (2) nevertheless, defendant moved the train in its unsafe condition, in direct violation of the LIA.

Based on this, we conclude there are disputed issues of material fact whether defendant violated the LIA by failing to maintain its locomotive in proper condition, 49 C.F.R. § 229.7(a)(1); by moving the train when the remote consists did not respond to commands from the controlling locomotive, 49 C.F.R. § 229.13; and by using a locomotive whose systems and components created a

condition that endangered the safety of the locomotive and crew, 49 C.F.R. § 229.45.

■ Defendant argues that the communication problem between the consists was temporary and thus did not constitute a defect under 49 C.F.R. § 229.7(a)(1). Plaintiff offered deposition testimony to the contrary, however, in which members of the original and relieving train crews stated that the communication problem was not temporary because the remote consists would not respond to commands from the controlling locomotive despite all efforts to repair the problem. Additionally, when a part or appurtenance of a locomotive does not perform properly, the injured employee need not prove the existence of a defect. *S. Ry. v. Bryan*, 375 F.2d 155 (5th Cir.1967). Rather, evidence that the equipment failed to perform as required is sufficient to create liability under FELA for an LIA violation. *Grogg v. Mo. Pac. R.R.*, 841 F.2d 210 (8th Cir.1988).

Defendant further contends that plaintiff failed to produce evidence that the alleged failure of the remote consists to communicate created an unnecessary danger of personal injury as required for liability under 49 C.F.R. § 229.7(a)(1). Defendant asserted that in the absence of communication with the C consist, the train nevertheless could have safely proceeded to its ultimate destination, Phippsburg, albeit at a lower speed, as evidenced by the fact that the train operated safely from Milner to Adams Siding without communication between the remote consists and the lead locomotive.

Plaintiff offered the following evidence to the contrary: (1) without the remote consists in working order, the train could not make it up the hill to Phippsburg; (2) the remote consists would remain in the same power and throttle setting they were in when control was lost, despite the train engineer's attempt to slow or stop the train; and (3) the nonresponsive remote consists would not be able to provide dynamic braking, which is the primary way to control the train's speed on descending grades.

■ Defendant also argues that its alleged violation of the LIA did not proximately cause plaintiff's injuries because plaintiff

had completed the task of resetting the remote consists and was returning to the front of the train when he was injured. Contrary to defendant's assertion, however, a plaintiff alleging an LIA violation "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the [LIA]." *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969)(in similar SAA–FELA context); *see also Rogers v. Mo. Pac. R.R., supra* (Supreme Court abandoned proximate causation as negligence standard under FELA).

■ Here, there remains a question of fact whether the alleged violation was too remote from plaintiff's injury to establish legal causation. Although it is insufficient merely to establish that there was an LIA violation "in the air" when plaintiff was injured, we cannot conclude, as a matter of law, that the alleged violation played absolutely no part in plaintiff's injury. *See Wilson v. Union Pac. R.R.*, 56 F.3d 1226, 1230 (10th Cir.1995)(SAA–FELA context).

It is undisputed that plaintiff was injured while returning from attending to the alleged LIA violation. But for the alleged violation, plaintiff would not have been forced to walk on the steeply pitched, snow-covered ballast where the injury occurred. Even under a proximate causation analysis, it was foreseeable that an employee required to repair the remote consists must go to and return from the repair site. *See Wilson v. Union Pac. R.R., supra* (court denied railroad summary judgment against plaintiff who injured his ankle when returning from repairing an SAA violation).

In light of the fact that plaintiff was returning from the repair site and had not begun duties unrelated to the alleged LIA violation, we conclude the trial court improperly granted summary judgment on this issue.

## 2.

For the same reasons, we disagree with plaintiff's argument that the trial court erred in denying his summary judgment motion against defendant for its alleged violation of the LIA. *See Rogers v. Mo. Pac. R.R., supra.*

## II.

Plaintiff contends that the trial court also erred in determining that the LIA and FRSA regulations preclude his negligence claim under FELA that defendant failed to provide a reasonably safe walkway alongside its railroad tracks. Specifically, plaintiff asserts that the LIA's locomotive equipment standards, 49 C.F.R. pt. 229, and the FRSA's track safety standards, 49 C.F.R. §§ 213.1–241, do not cover the subject matter of safe walkways and, thus, do not preclude a FELA claim on this basis. Defendant argues that even if summary judgment were otherwise improperly granted, the trial court correctly determined that plaintiff's claim was precluded because defendant has complied with the FRSA's detailed regulations concerning ballast and track structure, and the track safety standards cover the issue of walkways. Alternatively, defendant argues that plaintiff's claim is negatively preempted. We agree with plaintiff.

## A.

■ First, the LIA does not preclude plaintiff's FELA claim for negligence. As discussed, the LIA imposes an absolute duty to provide safe equipment on locomotives. *See King v. S. Pac. Transp. Co.*, 855 F.2d 1485 (10th Cir.1988). The United States Supreme Court has explicitly stated that to promote the goal of nationwide uniformity of equipment standards, the LIA was intended to occupy the field of *locomotive equipment*, including "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier v. Atl. Coast Line R.R.*, 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926).

The Supreme Court further expounded upon the extent of the LIA's coverage in *Southern Ry. v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936), stating that "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute."

■ Thus, under *Napier* and *Lunsford,* a state law claim against manufacturers for defective design and construction of a locomotive's parts certainly is preempted by the LIA. *See Oglesby v. Del. & Hudson Ry.,* 180 F.3d 458 (2d Cir.1999); *Roth v. I & M Rail Link, L.L.C.,* 179 F.Supp.2d 1054 (S.D.Iowa 2001).

However, the Supreme Court also stated that the LIA is a supplement to FELA, and it has "the purpose and effect of facilitating employee recover[y], not of restricting such recovery or making it impossible." *Urie v. Thompson, supra,* 337 U.S. at 189, 69 S.Ct. at 1034 (commenting on the interaction between FELA and the LIA (formerly referred to as the Boiler Inspection Act)); *see also Palmer v. Union Pac. R.R., supra,* 12 F.Supp.2d at 590 ("FELA and LIA are *in pari materia* and must be liberally construed to carry out their remedial and humanitarian purposes").

Hence, we conclude that the LIA does not occupy the field of walkways. *Cf. Weaver v. Mo. Pac. R.R.,* 152 F.3d 427, 430 (5th Cir. 1998)(LIA does not " 'totally occup[y] the field' of locomotive safety" and thus does not preclude liability under FELA for failure to install air conditioners or protective screens); *Engvall v. Soo Line R.R.,* 632 N.W.2d 560 (Minn.2001)(LIA does not preempt state law FELA claim based on a violation of the LIA).

A walkway undisputedly is not locomotive equipment, and it is not attached to the locomotive so as to be an appurtenance. *See Black's Law Dictionary* 98 (7th ed.1999)(appurtenance is "[s]omething that belongs or is attached to something else"). Additionally, defendant is not a manufacturer, and plaintiff is not asserting a state law claim for defective design or construction.

### B.

■ Congress enacted the FRSA "to promote safety in every area of railroad operations." 49 U.S.C. § 20101. To accomplish this purpose, the Secretary of Transportation has delegated to the Federal Railroad Administration (FRA) the authority to prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety. 49 U.S.C. § 20103.

The FRSA provides that railroad safety regulations should be nationally uniform to the extent possible. However, it allows a state to adopt any "law, regulation, or order related to railroad safety or security until the Secretary of Transportation ... prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106.

■ Thus, the first issue is whether the FRSA covers the subject matter of railroad walkways. To prevail on a claim that the FRSA has preemptive effect, the FRSA regulations must not merely touch upon or relate to the subject matter, but must substantially subsume it. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

The vast majority of cases addressing locomotive-related accidents involve a state law claim and a federal claim for violation of the FRSA. In that posture, it is necessary to employ a preemption analysis. *See Waymire v. Norfolk & W. Ry.,* 218 F.3d 773 (7th Cir.2000). Here, however, we are presented with the interaction of two federal statutes, and thus, preemption in its constitutional sense does not apply. Nevertheless, the cases addressing the question whether the FRSA preempts state law railroad injury claims are instructive in determining whether plaintiff's FELA claim for negligence is precluded by the FRSA.

In cases brought under state law, the Supreme Court has established two areas, warning signs at grade crossings and speed regulations, in which the FRSA expressly preempts any inconsistent state regulations. *See Norfolk S. Ry. v. Shanklin,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000)(warning signs); *CSX Transp., Inc. v. Easterwood, supra* (speed limits).

The Seventh Circuit extended the Supreme Court's holdings in *Shanklin* and *Easterwood* to negligence claims *brought under FELA* concerning excessive speed regulations and inadequate warning devices. That court determined FELA is superseded by the FRSA to the same extent that the

FRSA preempts state law, and that liability may not be imposed under either when railroads have complied with FRSA requirements. *See Waymire v. Norfolk & W. Ry., supra.*

Several courts considering the issue have adopted the conclusion in *Waymire*, reasoning that the FRSA's goal of national uniformity would be defeated if an excessive speed negligence claim could be brought under FELA but not under state law. *See, e.g., Rice v. Cincinnati, New Orleans & Pac. Ry.*, 955 F.Supp. 739 (E.D.Ky.1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105 (N.D.Ala.1996). Other courts, however, have declined to follow *Waymire* reasoning that FELA and the FRSA are not in conflict, and that injured railroad employees would be left without recourse if their FELA claims were preempted by the FRSA. *See Earwood v. Norfolk S. Ry.*, 845 F.Supp. 880 (N.D.Ga. 1993); *Myers v. Ill. Cent. R.R.*, 323 Ill. App.3d 780, 257 Ill.Dec. 365, 753 N.E.2d 560 (2001).

Here, we are presented with a different question—whether a negligence claim brought under FELA for failure to provide safe walkways is preempted by FRSA regulations. Unlike the issues of excessive speed and inadequate warning devices that are expressly covered in the FRSA, the issue of walkways is not explicitly addressed in the federal safety regulations. The Supreme Court has not addressed the issue, and courts that have considered the question have disagreed. *Compare Grimes v. Norfolk S. Ry.*, 116 F.Supp.2d 995 (N.D.Ind. 2000)(FRSA does not cover question of walkways and thus plaintiffs are not precluded from bringing a FELA claim for negligent failure to provide safe walkways), *and S. Pac. Transp. Co. v. Pub. Utils. Comm'n*, 647 F.Supp. 1220 (N.D.Cal.1986) (state walkway requirements not covered by and thus not preempted by FRSA), *aff'd per curiam*, 820 F.2d 1111 (9th Cir.1987), *with Mo. Pac. R.R. v. R.R. Comm'n*, 948 F.2d 179 (5th Cir.1991)(finding that state regulation regarding walkways conflicted with FRSA and thus was preempted); *Norfolk & W. Ry. v. Pub. Utils. Comm'n*, 926 F.2d 567 (6th Cir. 1991)(state regulation of railroad bridge walkways preempted by FRSA); *Fernow v. Burlington N. Santa Fe Ry.*, 109 F.Supp.2d 678 (S.D.Tex.2000)(denying summary judgment on the basis that fact issues remained as to whether state regulation concerning railroad walkways was preempted by FRSA); *and Black v. Seaboard Sys. R.R.*, 487 N.E.2d 468 (Ind.Ct.App.1986)(walkways are part of track structure and rail system that are covered and thus preempted by FRSA regulations).

When there is no direct conflict or expressed intent to preclude a claim, it is necessary to determine from the respective laws or regulations whether preclusion has in fact occurred. The critical question in making this determination is whether Congress intended the claim to be superseded. *See Ill. Cent. Gulf R.R v. Tenn. Pub. Serv. Comm'n*, 736 S.W.2d 112, 114 (Tenn.Ct.App.1987)(preemption context).

Pursuant to its delegated authority, the FRA adopted the track safety standards that address the requirements for track geometry, structure, appliances, and inspections. *See* 49 C.F.R. §§ 213.1–241. Only subparts B and D of these standards address the matter of roadbed and ballast. *See Webster's Third New International Dictionary* 167, 1963 (1986)(roadbed is "the bed ... of a railroad on which the ties, rails, and ballast rest"; ballast is "gravel or broken stone laid in a [railroad] roadbed"). For plaintiff's claim to be superseded, then, subpart B or D of the track safety standards must cover the subject matter of walkways. We conclude that they do not.

Subpart B prescribes minimum requirements for roadbed and immediately adjacent areas, § 213.31; requires that drainage facilities adjacent to the roadbed be maintained and kept free of obstruction, § 213.33; and provides that vegetation adjacent to the roadbed must be controlled so it does not interfere with railroad employees performing trackside duties, § 213.37.

Subpart D of these standards prescribes minimum requirements for ballast, crossties, track assembly fittings, and the physical condition of the rails, § 213.101. Additionally, § 213.103 provides that:

Unless it is otherwise structurally supported, all track shall be supported by material which will—

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

These standards are directed at promoting a safe roadbed for trains, but offer no indication whether a railroad has a duty to provide safe walkways for employees alongside its tracks. *See Grimes v. Norfolk S. Ry., supra; S. Pac. Transp. Co. v. Pub. Utils. Comm'n, supra* (subpart B, dealing with vegetation near roadbeds, is designed to ensure that employees can perform necessary maintenance work and does not address whether railroad carriers are required to provide a safe walkway near railroad tracks upon which employees are to perform this work); *Ill. Cent. Gulf R.R. v. Tenn. Pub. Serv. Comm'n, supra* (subparts B and D of track safety standards do not cover subject matter of walkways).

Nothing in the language of the FRSA conflicts with or undermines the primary function of FELA. Rather, the purpose of the FRSA, to promote safety in all areas of railroad operations and reduce railroad related accidents, 49 U.S.C. § 20101, is consistent with the goal of FELA, to promote employee safety and hold railroads liable for injuries caused by their negligence, *Consol. Rail Corp. v. Gottshall, supra.*

We disagree with defendant that its alleged compliance with the FRSA's track safety standards precludes a finding of negligence under FELA. *See Weaver v. Mo. Pac. R.R., supra* (compliance with the LIA is not determinative of negligence under FELA); *Mosco v. Baltimore & Ohio R.R.,* 817 F.2d 1088 (4th Cir.1987)(railroad may be held liable under FELA for LIA violation even when it is in full compliance with FRSA regula-

tions). Because walkways are not covered by the FRSA, whether defendant complied with these regulations is immaterial in determining whether a reasonable person in defendant's situation would have provided walkways alongside its tracks. *See Failing v. Burlington N. R.R.,* 815 P.2d 974 (Colo.App. 1991).

## C.

 Alternatively, defendant asserts that even if the FRSA does not cover the subject matter of safe walkways, its failure to include the matter in the track safety standards negatively preempts plaintiff's FELA claim. Again, we disagree.

 Negative preemption occurs "where failure of . . . federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute." *Ray v. Atl. Richfield Co.,* 435 U.S. 151, 178, 98 S.Ct. 988, 1004, 55 L.Ed.2d 179 (1978)(quoting *Bethlehem Steel Co. v. N.Y. State Labor Relations Bd.,* 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234 (1947)). Negative preemption requires an "authoritative federal determination that [an] area is best left unregulated." *Sprietsma v. Mercury Marine,* 537 U.S. 51, 123 S.Ct. 518, 528, 154 L.Ed.2d 466 (2002).

Here, defendant has failed to point to a clear congressional directive that would lead us to interpret the FRSA track safety standards as precluding plaintiff's FELA claim. In fact, defendant has failed to adduce any evidence that the FRA, in promulgating the track safety standards, even considered the issue of safe walkways for railroad employees. Thus, in light of the facts that FELA and the FRSA share a common purpose, *see Waymire v. Norfolk & W. Ry., supra* (noting that FELA imposes upon railroads the duty to provide a safe workplace, and the FRSA requires the Secretary of Transportation to prescribe regulations for railroad safety), that there is a presumption against preemption, *see Largo v. Atchison, Topeka & Santa Fe Ry.,* 131 N.M. 621, 41 P.3d 347 (N.M.Ct. App.2001), and that the FRSA does not cover the subject matter of railroad walkways, we conclude that the FRSA does not preclude

plaintiff from bringing a negligence claim under FELA for failure to provide safe walkways.

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

Judge ROY and Judge WEBB, concur.