**Russell A. DEHAHN, Appellant–Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Appellee–Defendant.**

No. 79A02–0905–CV–443.

Court of Appeals of Indiana.

April 15, 2010.

Edward F. Brennan, Ryan Brennan, The Brennan Law Firm, P.C., Belleville, IL, Donald K. Blair, Blair and Griffith, Monticello, IN, Attorneys for Appellant.

Geoffrey L. Blazi, John C. Duffey, Sarah N. Snoeberger, Stuart & Branigin LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Russell A. DeHahn ("DeHahn") appeals the Tippecanoe Circuit Court's grant of summary judgment in favor of CSX Transportation, Inc. ("CSX") in DeHahn's action claiming that CSX was liable under the Federal Employers Liability Act ("FELA") for injuries DeHahn sustained while employed by CSX. On appeal, De-Hahn presents three issues, which we reorder and restate as:

I. Whether DeHahn's FELA claim against CSX is precluded by the Federal Railroad Safety Act ("FRSA");

II. Whether the evidence designated by DeHahn established a genuine issue of material fact precluding summary judgment; and

III. Whether the trial court erred in refusing as untimely a report De-Hahn designated as evidence in opposition to CSX's motion for summary judgment.

We reverse and remand.

### Facts and Procedural History

The facts in the light most favorable to DeHahn, as the non-moving party, reveal that, at the time of the incident at issue, DeHahn worked as a railroad track foreman and inspector and had worked for CSX since 1980. On April 3, 2003, De-Hahn performed his inspection duties by walking along a line of track near a bridge over the Wabash River north of Lafayette, Indiana. DeHahn walked on the outside of the track on the ends or "heads" of the railroad crossties because employees were not allowed to walk in the middle of the track while performing an inspection. Approximately 300 feet south of the bridge, there was a stretch of track where the heads of the crossties were completely covered with two to four inches of ballast.[1] The ballast had been on top of the crossties for over two years, ever since CSX had dumped ballast rocks to "build up the shoulder" of the track. Appellant's App. p. 169. Pursuant to CSX policy, such ballast was not to be left on top of the cross-

---

1. In this sense, "ballast" means "gravel or broken stone laid in a roadbed esp. of a railroad to provide a firm surface for the track, to hold the track in line, and to facilitate drainage." Webster's Third New International Dictionary 167 (1976).

ties; and "ballast regulators" were to be used to push the ballast off the track and sweep it off the crossties. DeHahn had complained previously to his supervisors that the ballast needed to be removed, but to no avail.

Because there was no other walkway available to him as he performed his inspection, DeHahn had to walk on the ballast on top of the crossties. Even though he was careful to watch his step as he walked on the ballast, some of the ballast rolled out from under his feet, and DeHahn slid and rolled forty feet down the railroad embankment and injured his left leg, left hip, lower back, and right shoulder. In his deposition, DeHahn testified that the safety training he had received for walking on ballast consisted of being told to "watch his footing." Appellant's App. pp. 64, 169.

On December 14, 2005, DeHahn filed a complaint under FELA seeking damages for the injuries he sustained while employed by CSX. On February 25, 2009, shortly before the scheduled trial, CSX filed a motion for summary judgment, claiming that there was no evidence of negligence and that DeHahn's FELA claim was "preempted" by FRSA. DeHahn filed his response in opposition to summary judgment on March 26, 2009. As part of his response, DeHahn designated an engineering report prepared by his expert, Raymond Duffany ("Duffany"). On April 3, 2009, the day of the scheduled summary judgment hearing, CSX filed an objection to Duffany's report, claiming it was not properly verified and should not be considered.[2] The trial court granted DeHahn's request for time to respond to

CSX's objection, and on April 9, 2009, DeHahn filed his reply in which he resubmitted Duffany's report, this time accompanied by Duffany's affidavit stating that he had prepared the report based on his personal knowledge. CSX objected to the affidavit and report as untimely. On April 14, 2009, the trial court granted summary judgment in favor of CSX, concluding that Duffany's affidavit and report were untimely and would therefore not be considered. The trial court further concluded that there was no genuine issue of material fact and that CSX was not negligent as a matter of law. The trial court therefore did not address CSX's argument that DeHahn's FELA claim was precluded by FRSA. DeHahn now appeals.

## Summary Judgment

We review a summary judgment order de novo. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 196–97 (Ind.2009). "Considering only those facts supported by evidence that the parties designated to the trial court, we must determine whether there is a 'genuine issue as to any material fact' and whether 'the moving party is entitled to a judgment as a matter of law.' " *Id.* (citing Ind. Trial Rule 56(C)). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Id.* The moving party bears the burden of making a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009). Once the movant satisfies the burden, the burden then shifts to the non-

---

**2.** *See* Trial Rule 56(E); *Ind. Univ. Med. Ctr. v. Logan,* 728 N.E.2d 855, 858 (Ind.2000) ("[u]nsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence."); *Duncan v. Duncan,* 764 N.E.2d 763, 766 (Ind.Ct.App.2002) (noting that a court will not consider unsworn or unverified attachments in opposition to a motion for summary judgment).

moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. *Id.*

## I. FELA vs. FRSA

CSX argues that we can affirm the trial court's judgment on grounds that the trial court did not address, i.e. that DeHahn's FELA claim is precluded by operation of federal regulations promulgated pursuant to FRSA. *See Cook v. Ford Motor Co.*, 913 N.E.2d 311, 322 (Ind.Ct.App.2009) (noting that we may affirm a grant of summary judgment on any basis supported by the record), *trans. denied.* We address this argument first because, if DeHahn's claim is precluded, we need not address De-Hahn's remaining arguments. In order to address this claim, we first provide some background on both of these federal statutory schemes.

### A. FELA

DeHahn's claim against CSX is based upon FELA, the Federal Employers' Liability Act,[3] 45 U.S.C. §§ 51–60 (2009). FELA creates a negligence action for railroad employees injured in the scope of their employment:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. Congress's purpose in enacting FELA was a humanitarian one. *Januchowski v. N. Ind. Commuter Transp. Dist.*, 905 N.E.2d 1041, 1046 (Ind. Ct.App.2009), *trans. denied* (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 434, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). "The impetus for the FELA was that throughout the 1870's, 80's, and 90's, thousands of railroad workers were being killed and tens of thousands were being maimed annually in what came to be increasingly seen as a national tragedy, if not a national scandal." *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1029 (2004). To address this situation, "Congress crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

The United States Supreme Court has liberally construed FELA to further its remedial and humanitarian purpose. *Januchowski*, 905 N.E.2d at 1046 (citing *Urie v. Thompson*, 337 U.S. 163, 181–82, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). Although FELA is to be construed liberally, it is not a worker's compensation statute. *Miller*, 858 A.2d at 1031 (citing *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396). Therefore, FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence,

---

**3.** Despite its name, FELA only covers employees of those railroads engaged in interstate commerce. *See CSX Transp., Inc. v. Miller,* 159 Md.App. 123, 858 A.2d 1025, 1029 (2004).

not the fact that injuries occur." *Id.* As such, FELA plaintiffs must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061–62 (7th Cir.1998). This has both its benefits and its detriments:

> On the downside, it is, to be sure, more difficult [than under workers' compensation statutes] to establish a provable claim.... On the upside, the courts look with favor on FELA suits and the rewards for a successful plaintiff are invariably higher than would be the case with a workers' compensation award.

*Miller*, 858 A.2d at 1032.

Although a FELA claim is based on the negligence of the railroad employer, *Gottshall*, 512 U.S. at 543, 114 S.Ct. 2396, a FELA claim is not precisely the same as a common law negligence claim. *See Miller*, 858 A.2d at 1032. As noted by the Court in *Gottshall*:

> In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers. Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense.

512 U.S. at 542–43, 114 S.Ct. 2396 (citing 45 U.S.C. §§ 51, 53–55).

The existence of negligence under FELA is a question of federal law, not state law. *Miller*, 858 A.2d at 1033. "What constitutes negligence for [FELA] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local law for other purposes. Federal decisional law formulating and applying the concept governs." *Urie*, 337 U.S. at 174, 69 S.Ct. 1018. "Although FELA actions may be adjudicated in state courts and therein follow state procedural rules, the proceedings are governed by federal substantive law." *Januchowski*, 905 N.E.2d at 1046 (quoting *Gouge v. Ind. Commuter Transp. Dist.*, 670 N.E.2d 363, 365 (Ind.Ct.App.1996)).

This substantive federal law "involves a significant watering down of the proof of causation." *Miller*, 858 A.2d at 1035. As explained by the Court in *Gottshall*:

> We have liberally construed FELA to further Congress' remedial goal.... We [have] stated, "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought."

512 U.S. at 543, 114 S.Ct. 2396 (emphasis supplied) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). The Supreme Court has consistently applied this liberal interpretation to FELA. *See Atchison, Topeka, & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) ("We have recognized generally that the FELA is a broad remedial statute, and have adopted a 'standard of liberal construction in order to accomplish [Congress'] objects.'" (quoting *Urie*, 337 U.S. at 180, 69 S.Ct. 1018)); *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) ("[I]t is clear that the general congressional intent was to provide liberal recovery for injured workers."); *Urie*, 337 U.S. at 180–81, 69 S.Ct. 1018 (noting the "accepted standard of liberal construction" of FELA); *Jamison v. Encarnacion*, 281 U.S. 635, 640, 50

S.Ct. 440, 74 L.Ed. 1082 (1930) ("[FELA] is to be construed liberally to fulfill the purposes for which it was enacted."). "In the wake of this juggernaut of language, consistently iterated and reiterated over the course of seven and one-half decades, it is not hard to figure out who wins, ties and who gets the benefit of the close calls." *Miller*, 858 A.2d at 1038.

### B. FRSA

The other body of federal law involved in the resolution of the present case is FRSA, the Federal Railroad Safety Act.[4] "In 1970, Congress enacted [FRSA] 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *Randall v. Norfolk S. Ry. Co.*, 800 N.E.2d 951, 954 (Ind.Ct. App.2003), *trans. denied* (quoting 49 U.S.C. § 20101). "FRSA grants the Secretary of Transportation the authority to 'prescribe regulations and issue orders for every area of railroad safety.'" *Id.* (quoting 49 U.S.C. § 20103(a)). As we noted in *Randall*, FRSA contains an express preemption provision, which states:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order *covering the subject matter* of the State requirement.

49 U.S.C. § 20106 (emphasis added). This preemption clause "facilitate[s] the goal of national uniformity[.]" *Grimes v. Norfolk S. Ry. Co.*, 116 F.Supp.2d 995, 1000 (N.D.Ind.2000). "In cases brought under state law, the Supreme Court has found two areas, speed regulations and warning signs, where federal regulations pursuant to FRSA have 'covered' the field such that any attempts at state regulation inconsistent with the federal regulations are preempted." *Id.* (citing *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)).

■ In *Waymire v. Norfolk & Western Railway Co.*, 218 F.3d 773, 776 (7th Cir. 2000), the Seventh Circuit Court of Appeals extended the preemption holdings of *Shanklin* and *Easterwood* to hold that negligence claims brought under FELA, not state law, concerning claims of excessive speed and inadequate warning devices were precluded[5] by FRSA regulations covering those subjects. As explained by the Colorado Court of Appeals in *Elston v. Union Pacific Railroad*:

> Several courts considering the issue [of FRSA preclusion of FELA claims] have adopted the conclusion in *Waymire*, reasoning that the FRSA's goal of national uniformity would be defeated if an excessive speed negligence claim could be brought under FELA but not under state law. Other courts, however, have declined to follow *Waymire*, reasoning that FELA and the FRSA are not in conflict, and that injured railroad employees would be left without recourse if their FELA claims were preempted by the FRSA.

---

4. FRSA was originally codified at 45 U.S.C. §§ 421–447. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). As part of the Federal Railway Safety Authorization Act of 1994, FRSA was recodified without substantive change at 49 U.S.C. §§ 20101–20153.

5. When analyzing whether a FELA claim may proceed or is barred by FRSA regulations, the question is one of preclusion or supersession, not federal preemption of a state law. *See Elston v. Union Pac. R.R. Co.*, 74 P.3d 478, 487 (Colo.Ct.App.2003); *Miller*, 858 A.2d at 1047–48; *Grimes*, 116 F.Supp.2d at 1000.

74 P.3d 478, 487 (Colo.Ct.App.2003) (citations omitted).

### C.   The Present Controversy

CSX argues that DeHahn's claim, brought under FELA, is precluded by FRSA regulations regarding ballast. At issue specifically is 49 C.F.R. § 213. Subsection 213.101 provides, "This subpart prescribes minimum requirements for *ballast,* crossties, track assembly fittings, and the physical conditions of rails." (emphasis added). With regard to ballast, subsection 213.103 provides:

**Ballast; general.**

Unless it is otherwise structurally supported, all track shall be supported by material which will—

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement [sic].

This is the only FRSA-based regulation of ballast. *See Miller,* 858 A.2d at 1050. CSX claims, and DeHahn does not dispute, that there is no indication that CSX was not in compliance with subsection 213.103 with regard to the ballast on the section of the railroad where DeHahn fell. CSX therefore argues that allowing DeHahn's FELA claim to proceed would run contrary to the purpose of national uniformity behind FRSA.

The parties do not refer us to, nor has our research revealed, any Indiana case law directly addressing this issue.[6] Thus, the question of whether a FELA claim is precluded by FRSA is an issue of first impression in this state. Looking outside Indiana, there is a split of authority over whether FRSA regulations of ballast precludes a FELA-based claim premised upon a claim of unsafe ballast. *See Elston,* 74 P.3d at 487 (noting split in authority).

In resolving this issue, we are guided by the Supreme Court's analysis of FRSA preemption of state-law claims in *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In addressing the defendant's claim that the plaintiff's state common-law negligence claims were preempted by FRSA, the Court noted that FRSA, by its own statutory language, preempted state laws and regulations only if the Secretary of Transportation had prescribed a regulation or issued an order "covering the subject matter" of the state law or regulation. *Id.* at 662. The Court wrote:

> To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

*Id.* at 664–65. Thus, for DeHahn's claim to be precluded or superseded, the FRSA regulation must "cover" the subject matter of his FELA claim. *See Elston,* 74 P.3d at 487 (applying *Easterwood* preemption test in analyzing FRSA preclusion of FELA claim).

---

**6.**   As discussed below, this court has previously held that certain *state* law claims were preempted by FRSA. But we have found no case where we have addressed FRSA preclusion of a FELA claim.

■■■ As have many courts that have considered similar questions, we conclude that the FRSA regulation of ballast does not "cover" DeHahn's FELA claim that CSX was negligent in its placement of ballast on top of the railroad ties. We first note that FRSA and FELA are generally not in conflict. As noted by the Colorado Court of Appeals in *Elston:*

[n]othing in the language of the FRSA conflicts with or undermines the primary function of FELA. Rather, the purpose of the FRSA, to promote safety in all areas of railroad operations and reduce railroad related accidents, ... is consistent with the goals of FELA, to promote employee safety and hold railroads liable for injuries caused by their negligence.

74 P.3d at 488 (citations omitted). And as noted by Judge Sharp in *Grimes:*

There is ... nothing in the language or legislative history of any enactment, including FRSA, that indicates the serious purpose of undermining the basic core of FELA and its essential purposes. Neither has the Supreme Court, nor for that matter any decision of the Circuit Courts of Appeal, indicated a basic hostility to the legislative purpose embedded in FELA, now or in the past.

116 F.Supp.2d at 1003. Instead, "the [FRSA] regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains." *Id.* at 1002–03.

Turning to the more specific question of the preclusive or preemptive effect of federal ballast regulation, we agree with the holding of the Maryland Court of Special Appeals in *Miller:*

Even a surface glance at [49 C.F.R. § 213] persuades us that it does not touch, let alone pervasively cover, the railroad yard conditions that allegedly fell short of the safe and healthy workplace environment that CSX was obli-

gated to provide for its employees.... The obvious concern [of the regulation] is with the safety of the train, the prevention of derailments, and not the quality of the work place provided for employees.

858 A.2d at 1050 (citing *S. Pac. Transp. Co. v. Pub. Util. Comm'n,* 647 F.Supp. 1220, 1225 (N.D.Cal.1986), *aff'd,* 820 F.2d 1111 (9th Cir.1987)).

In the present case, DeHahn claims that the placement of the ballast on top of the ties, and CSX's failure to remedy this, caused him to slip and fall while inspecting the rail. Subsection 213.103 does not mention worker safety or whether ballast should be allowed to remain on crossties; it is instead concerned with ensuring that the railroad's track is structurally sound. In light of FELA's humanitarian purpose, and the liberal construction given to effectuate this humanitarian purpose, we cannot say that DeHahn's FELA claim that CSX was negligent by leaving ballast on top of crossties is precluded by FRSA regulations governing ballast. *See Miller,* 858 A.2d at 1052–53 (rejecting defendant railroad's argument that plaintiff's FELA claim was precluded by FRSA where plaintiff claimed his injuries were caused in part by defendant's use of large ballast); *Elston,* 74 P.3d at 488–89 (holding that plaintiff's FELA claim that his injury was caused by defendant railroad's failure to provide reasonably safe walkways alongside its tracks was not precluded by defendant's alleged compliance with FRSA regulations regarding ballast); *Grimes,* 116 F.Supp.2d at 1002–03 (holding that plaintiff's FELA claim alleging that his injuries were caused in part by overly-large ballast was not precluded by defendant's compliance with FRSA ballast regulations). *But see Norris v. Cent. of Ga. R.R. Co.,* 280 Ga.App. 792, 635 S.E.2d 179 (2006) (concluding that plaintiff's FELA claim alleg-

ing that defendant was negligent for not using smaller ballast was precluded because allowing plaintiff's claim to proceed would undermine FRSA's goal of national uniformity in railroad regulations); *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 432–33 (6th Cir.2009) (holding that plaintiff's FELA claim alleging injuries caused by years of walking on oversized ballast was precluded by FRSA regulations regarding ballast).[7]

We recognize that this court has previously held that certain state law claims were preempted by FRSA. In *Black v. Baltimore and Ohio Railroad Co.*, 398 N.E.2d 1361 (Ind.Ct.App.1980) ("*Black*"), this court held that a union president's complaint requesting the public service commission to institute a program to correct muddy, hazardous conditions caused by "lack of good crossties, ballast and poor drainage" was preempted by federal regulations of ballast, crossties, and rail joints. *Id.* at 1362–63. The *Black* court concluded that "the federal government has entered the area of railroad safety to a sufficient extent to preclude state action in response to [the] complaint."[8] *Id.* at 1363.

In *Black v. Seaboard System Railroad*, 487 N.E.2d 468 (Ind.Ct.App.1986) ("*Seaboard*"), this court similarly concluded that the same union president's complaint requesting the commission to recommend standards for the construction and maintenance of walkways to protect worker safety was precluded by federal regulations. *Id.* at 468. The court concluded that "[a]lthough unsafe walkways have not been the subject of specific federal regulations, the

regulations as adopted indicate a congressional determination to regulate the entire railroad area." *Id.* at 469 (citing *Black*, 398 N.E.2d at 1362). Because walkways are part of the track structure, the court concluded that state regulation of walkways was preempted.[9] *Id.*

CSX cites both *Black* and *Seaboard* in support of its argument that DeHahn's current FELA based claim is precluded by FRSA regulation. We find both cases to be distinguishable. We first note that *Black* and *Seaboard* used a very broad definition of federal preemption. *See Black*, 398 N.E.2d at 1363 (finding preemption where federal government had simply "entered the area" of railroad safety); *Seaboard*, 487 N.E.2d at 469 (concluding that federal regulations indicated intent to regulate "the entire railroad area"). In *Easterwood*, however, the Supreme Court explained that for state law claims to be preempted by FRSA, the regulations at issue must "cover" or "substantially subsume" the subject matter of the state regulation, not merely "touch upon" or "relate to" the subject matter. 507 U.S. at 664–65, 113 S.Ct. 1732. It is this narrower "covering" test for preemption (or more properly in our case, preclusion) that we apply here. *See Elston*, 74 P.3d at 487 (applying *Easterwood* preemption test in analyzing FRSA preclusion of FELA claim).

Further, in both *Black* and *Seaboard*, the plaintiff requested that an Indiana agency regulate specific areas of railroad safety. *See Black*, 398 N.E.2d at 1362; *Seaboard*, 487 N.E.2d at 468. Here, how-

---

7. We also note that *Norris* and *Nickels* involved claims that the railroads used oversized ballast, whereas here DeHahn claims that CSX was negligent for failing to remove the ballast from the crossties.

8. The court further held that the conditions were not a distinctively local safety hazard

that would otherwise allow state action. *Id.* at 1363.

9. As it had in *Black*, the court also concluded that the conditions at issue were not sufficiently localized to permit state regulation. *Id.*

ever, DeHahn is not urging a *state* agency to adopt or regulate railroad safety. Instead, he brings suit under a *federal* law that has been liberally construed to compensate railroad workers injured as a result of employer negligence. As noted above, there is no indication that Congress intended FRSA to undermine the purpose of FELA. *See Elston,* 74 P.3d at 488; *Grimes,* 116 F.Supp.2d at 1003. We therefore do not consider *Black* and *Seaboard* as controlling. In short, we cannot agree with CSX that DeHahn's FELA claim is precluded by FRSA regulations.

## II. Propriety of Summary Judgment

█ Although DeHahn claims that his expert's report, had it been considered by the trial court, would have precluded summary judgment, he also argues that, even if the report is not considered, the remaining evidence he designated is sufficient to preclude summary judgment. We agree.

In DeHahn's own deposition, which he designated in opposition to CSX's motion for summary judgment, he explained that he had worked for CSX for almost twenty-five years and that, based on his experience and safety training, the track was supposed to be free of any items, including ballast. DeHahn explained that CSX used machines called ballast regulators to push the ballast off the track and sweep any ballast off the crossties after it had been dumped. DeHahn further stated that the area where he fell had crossties that had been covered by ballast for over two years and that he had told his supervisor that a regulator needed to remove the ballast from the area where his accident occurred. Despite his complaints, CSX did nothing.

DeHahn also designated the affidavits of long-time coworkers Charlie Shirley ("Shirley") and Pascel Pillion ("Pillion"), wherein both men stated that the ballast in the area where DeHahn fell had been covering the crossties for approximately three years and had never been removed, de-

spite company policy to sweep ballast off crossties after dumping it. In fact, both Shirley and Pillion stated in their respective affidavits that, during their employment with CSX, they had "never seen ballast simply left on the tops of crossties and unregulated for three or more years at any other location within [CSX]'s system." Appellant's App. pp. 104, 106.

In support of its motion for summary judgment, CSX designated, among other things, the affidavit of a witness who testified that CSX had not violated any federal regulations or company rules or policies. Based on the conflict contained in the designated evidence, we must conclude that there was indeed a genuine issue of material fact with regard to CSX's negligence in failing to remove the ballast from the crossties despite a company policy to do so. *See Gottshall,* 512 U.S. at 543, 114 S.Ct. 2396 (noting that FELA claim should be presented to a jury if the evidence indicates that "employer negligence played any part, even the slightest" in the plaintiff's injuries).

The evidence designated by DeHahn in opposition to CSX's motion for summary judgment, even when Duffany's report is not taken into consideration, is sufficient to establish that there is a genuine issue of material fact regarding CSX's placement of the ballast on the ties, its failure to remove them despite its own policy to do so, and whether this constitutes a breach of CSX's duty to DeHahn under FELA.

## III. Supplemental Designation of Evidence

DeHahn claims that the trial court abused its discretion in refusing to consider the report that he submitted, with the accompanying affidavit, in response to CSX's objection to the unverified report that DeHahn initially designated in opposition to summary judgment. Because we have concluded above that, even if the trial court properly refused to consider the re-

port, the trial court erred in granting summary judgment, we need not address this issue.[10]

### Conclusion

DeHahn's FELA claim against CSX is not precluded by FRSA regulations regarding ballast. Considering the designated evidence in the light most favorable to DeHahn as the non-moving party, and given the liberal interpretation of FELA, we conclude that there is a genuine issue of material fact with regard to whether CSX was negligent in failing to remove the ballast from the crossties. We therefore do not address DeHahn's argument that the trial court erred in failing to consider his expert's report as designated evidence. The trial court's entry of summary judgment in favor of CSX is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., and BROWN, J., concur.

10. DeHahn claims that Duffany's report will be critical if his case goes to trial. This may be true, but whether the report was timely submitted for summary judgment purposes is immaterial to the admissibility of the report at trial.