

FILED

Mar 16 2026, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Norfolk Southern Railway Company,

*Appellant-Defendant*

v.

Scott Sporner,

*Appellee-Plaintiff*

March 16, 2026

Court of Appeals Case No.
25A-CT-1138

Appeal from the Elkhart Superior Court

The Honorable Christopher J. Spataro, Judge

Trial Court Cause No.
20D05-2104-CT-63

**Opinion by Judge Foley**
Judges May and Altice concur.

**Foley, Judge.**

[1] Following a jury trial, Norfolk Southern Railway Company ("Railroad") was found liable for physical and economic injuries sustained by its employee, Scott Sporner ("Employee"), and ordered to pay damages. Railroad appeals the denial of its motion to correct error, which challenged the denial of its motion for judgment on the evidence. Railroad maintains that it was entitled to judgment on the evidence, presenting the following restated issues for review:

    I.    Whether the Federal Railroad Safety Act ("FRSA") precluded Employee's claim that Railroad is liable in tort under the Federal Employers' Liability Act ("FELA") for negligently operating a train with a one-man crew; and

    II.    Whether sufficient evidence supported Employee's claim to future lost wages.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of January 4, 2021, Employee was working in Railroad's railyard in Elkhart, Indiana, as a Remote Control Operator ("RCO"). He was working as a one-man crew, controlling a train with a handheld device. During Employee's shift, the yardmaster directed Employee to move his train in an eastward direction, not realizing that Railroad had a stationary train positioned farther eastward on the same track. Employee complied and started moving his train eastward. When moving the train, Employee was not positioned to keep a

lookout in front of the train. Rather, Employee was aboard the westernmost locomotive, farthest from the direction of travel. At approximately 6:50 p.m., Employee's train collided with the other train, seriously injuring Employee.

[4] On April 1, 2021, Employee filed a lawsuit against Railroad under FELA, which confers a private right of action to railroad employees. Employee ultimately alleged that Railroad or its agents were liable for negligently causing the train-on-train collision.[1] Employee sought compensation for various damages, including future lost wages based upon his total vocational disability.

[5] A jury trial was held over multiple days in March 2025. During Employee's opening statement, Employee informed the jury that, "years ago," there were larger railroad crews. Tr. Vol. 2 p. 97. That is, railroads used to have "a locomotive engineer running the train and then the conductor sitting next to him," so there were "two guys who are in charge." *Id.* at 94–95. Employee told the jury that, because Railroad "eliminated" positions, Railroad now operated at the Elkhart Yard with one-man RCO crews. *Id.* at 95. After opening statements, the trial court met with counsel outside the presence of the jury. Railroad asserted that "[a] statement was made" during opening statements that "was a criticism of having . . . only one RCO," but "federal regulations . . . allow for one RCO . . . ." *Id.* at 127. Railroad argued that a negligence claim based on a one-man crew "would be precluded by federal

---

[1] The complaint was amended in April 2024. However, the amended complaint was not provided on appeal.

law." *Id.* Railroad said that it would like to "raise an objection . . . governing future evidence in the trial" and get this issue "on the record . . . ." *Id.*

[6] Employee agreed that Railroad was "permitted by federal law to have a single RCO doing all this work . . . ." *Id.* However, Employee argued that "[w]hether they're permitted to or not by law is not the issue" in that a jury could find that using a one-man RCO crew at a busy railyard is "not what a reasonably safe railroad would do." *Id.* at 128. The trial court overruled Railroad's objection, noting: "[I]f there is federal law that says one operator is allowed or you need only have one RCO for instance, I don't think that [it] prohibits [Employee] from arguing in addition to the one RCO, there should be a conductor, an engineer, or a u-man" or that "under the circumstances there might be something more reasonable." *Id.* at 129.

[7] At trial, Employee testified that he was physically injured in the train collision, with injuries to his shoulder, hip, and head. He presented testimony from multiple treating physicians, including Dr. Christopher Jordan ("Dr. Jordan"), whose recorded deposition was played in court.[2] Dr. Jordan evaluated Employee on February 5, 2021, approximately one month after the collision, and determined that Employee "sustained a concussion and may be dealing with postconcussive syndrome or continued symptoms beyond the initial concussion or head injury." Appellant's App. Vol. 2 pp. 42–43. Employee was

---

[2] The video was not transmitted on appeal. The parties instead rely on a deposition transcript provided in the Appendix. *See* Appellant's App. Vol. 2 pp. 36–72.

seen again on March 5, 2021, complaining of "visual symptoms as well as headaches and sensitivity to noise," with those symptoms scored as severe. *Id.* at 43. Employee also exhibited "challenges . . . with balance." *Id.* at 46. These symptoms were consistent with being in a train-on-train collision. Employee was referred to a neurologist, who found that Employee had "persistent headaches as well as other persistent symptoms after sustaining the concussion . . . ." *Id.* at 47. Employee also saw an otolaryngologist, who diagnosed him with bilateral tinnitus stemming from a traumatic brain injury sustained during the collision. The otolaryngologist opined that the tinnitus is permanent.

[8] Dr. Jordan was asked whether Employee's symptoms were "chronic or permanent and have plateaued . . . ." *Id.* at 48. Dr. Jordan said: "That would be my -- my opinion, yes." *Id.* He added: "[I]t's a very unfortunate situation for him, you know. He has chronic persisting symptoms that I think he will have to manage on some level indefinitely." *Id.* at 49. Dr. Jordan noted that Employee had "gone to lengths" to manage his symptoms, including "meeting with psychiatrists, meeting with behavioral therapists," and following advice from Dr. Jordan and the neurologist. *Id.* He explained that "those will likely be lifelong strategies that he'll have to use in some capacity to help manage his life at this point." *Id.* Although Employee's neurological symptoms persisted, he underwent successful surgeries to repair injuries to his shoulder and hip.

[9] Employee planned to present expert testimony from Delores Gonzalez ("Gonzalez"), a vocational rehabilitation counselor, as to his employability. He also planned to present expert testimony from Jeffrey Opp ("Opp"), a

forensic economist who reviewed Gonzalez's report and calculated Employee's economic damages. Railroad filed a motion to exclude all of Gonzalez's testimony as well as testimony from Opp regarding future wage loss, arguing there was a lack of foundation to admit the expert testimony. Railroad claimed that Gonzalez's opinion about Employee's vocational prospects relied on a medical opinion from Dr. Jordan that was found in medical records but not elicited in Dr. Jordan's deposition testimony. Railroad argued that, as a result, there was a lack of foundation to admit the challenged testimony from Gonzalez and Opp: "Completely absent from the record is any medical opinion or testimony that [Employee] is unable to work or even restricted in his ability to work, but this is precisely the evidence needed as foundation for the expert opinions challenged here." Defendant's Motion to Exclude the Testimony of Delores Gonzalez and Selected Testimony of Jeffrey Opp at 2, *Sporner v. Norfolk S. Ry. Co.*, No. 20D05-2104-CT-63 (Elkhart Sup. Ct. Mar. 5, 2025).[3]

[10] The trial court denied Railroad's motion to exclude the expert testimony, reasoning that "an expert witness can . . . give opinions based on sets of facts or hypothetical facts" and "if it turns out that the hypothetical facts on which either of these two witnesses rely do not come into evidence," then Railroad "is certainly free to, not only impeach the witnesses[,] but also to argue in closing

---

[3] The motion was not transmitted on appeal but is available in the Odyssey case-management system.

argument that the jury should completely disregard [their] opinions . . . because they were based on facts that never came into evidence." Tr. Vol. 3 p. 11.

[11] Employee later presented live testimony from Opp, along with deposition testimony from Gonzalez, which was read into the record. Railroad objected at pertinent times throughout the experts' testimony, maintaining that there was a lack of foundation due to the underlying reliance on a medical opinion not contained in Dr. Jordan's testimony. The trial court overruled these objections.

[12] Gonzalez testified that she "was asked to evaluate [Employee] to assess his employability and potential for vocational rehabilitation." *Id.* at 59. In assessing Employee's employability, Gonzalez reviewed "all of the medical records . . . ." *Id.* at 60. Gonzalez said there was "information from Dr. Jordan," who "said [Employee] was permanently disabled from his regular . . . occupation" and "has cognitive challenges that lead to lapses in memory and concentration." *Id.* at 68. Based on her review of the medical records, Gonzalez concluded that Employee "was not a candidate for vocational rehabilitation" in that "he was not . . . currently capable of any competitive work as a direct result of the work injury . . . ." *Id.* at 73. Gonzalez prepared an expert report containing this opinion. As to economic damages, Opp testified that he relied on Gonzalez's report "as it relates to [Employee's] ability to work." *Id.* at 21. Opp understood that Employee could not return to gainful employment, resulting in "future los[t] earnings [of] $2,009,492." *Id.* at 34.

[13]   After Employee presented his case-in-chief, Railroad moved for judgment on the evidence on two grounds.  First, Railroad focused on "any legal theory or argument or any potential liability based on an RCO crew of one person," arguing this theory of negligence was precluded by federal law.  Tr. Vol. 4 p. 35.  Railroad referred to two federal statutes applicable to the railroad industry— FRSA, which is a regulatory statute, and FELA, which confers a private right of action to railroad employees.  Interpreting these statutes, Railroad argued that "FRSA specifically authorized one[-person] crews and because of the interplay between [] FELA and [] FRSA, [] FRSA is going to preclude finding a[] FELA violation for something that . . . FRSA specifically authorizes."  *Id.*  Employee responded that, in light of the United States Supreme Court's reasoning in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), a preclusion case involving different statutes, "FRSA cannot preclude a[] FELA claim because they're equal federal statutes and there's no express preclusion provision in it."  Tr. Vol. 4 p. 36.  At oral argument on the motion, Railroad asserted that, after the *POM Wonderful* decision, no controlling authority "ha[d] interpreted the preclusive effect of FRSA on FELA."  Tr. Vol. 4 p. 41.

[14]   As a separate ground for judgment on the evidence, Railroad argued that Employee "has not provided evidentiary support for future wage losses premised on a total inability to work" and, therefore, failed to prove this type of economic damage with reasonable certainty.  Appellant's App. Vol. 2 p. 82.  Railroad argued that "Opp's future wage losses relied on medical testimony as transmitted through the medium of the Gonzalez report" and the record was

devoid of "any *medical* opinion or testimony that [Employee] is unable to work or even restricted in his ability to work." *Id.* at 83 (emphasis added). Railroad further argued that Employee "has not provided a foundation for [Gonzalez's] findings of total disability[,] and therefore[,] has failed to meet his evidentiary burden with regards to his claimed future wage and benefits losses." *Id.*

[15] The trial court ultimately denied the motion for judgment on the evidence. As to the preclusion issue, the trial court concluded that Employee could pursue a crew-size theory of negligence because "[n]either the plain text of [] FRSA nor its goal of national uniformity demand preclusion of FELA claims," but rather, "FRSA and the purposes underlying both it and FELA demand the opposite." Tr. Vol. 4 p. 44. As to Railroad's challenge to the evidence of future lost wages, the trial court said it was denying the motion "for the same reasons" it mentioned in denying Railroad's motion to exclude testimony from Gonzalez and Opp. *Id.* at 45. The court referred to Indiana Evidence Rules 703 and 705 and determined that, under these rules, "an expert may state an opinion and give the reason for it without first testifying as to underlying facts or data" and "experts may testify to opinions based on inadmissible evidence provided that it's the type reasonably relied upon by experts in the field." *Id.* The trial court added that it believed Gonzalez "was capable within her scope as an expert in the field of vocational rehab and having made thousands of disability determinations to render the opinions that she rendered." *Id.*

[16] The jury later found Railroad negligent, apportioning 60% of the fault to Railroad and 40% of the fault to Employee. It determined that Employee

sustained damages totaling $8.2 million.  On March 11, 2025, the trial court entered judgment, ordering Railroad to pay Employee $4,920,000 in damages.

On April 9, 2025, Railroad filed a motion to correct error, which focused on the denial of its motion for judgment on the evidence.  Railroad argued that "a new trial on liability and damages is warranted because the verdict may rest on [Employee's] theory that more than one crew member should have been assigned to his remote-control locomotive"—a theory "precluded under federal law."  Appellant's App. Vol. 2 p. 86.  In the alternative, Railroad sought a new damages trial because "the evidence cannot rationally support an $8.2 million gross verdict" and "[t]he outsized award necessarily depends on evidentiary errors."  *Id.* at 87.  Railroad argued that the "expert testimony regarding [Employee's] future lost wages rested entirely on the assumption that [Employee] was totally disabled and completely incapable of performing any work," but "no admissible evidence or testimony supported that assumption." *Id.*  Railroad asserted that Gonzalez "improperly served as the mouthpiece for the doctors' unadmitted medical opinions," which "she (as a vocational rehabilitation specialist) was not qualified to evaluate."  *Id.* at 101.  Railroad ultimately claimed a new damages trial was necessary because the award "rested at least in part on unsubstantiated evidence concerning [Employee's] future lost wages . . . ." *Id.* at 102.  On May 2, 2025, the trial court denied Railroad's motion to correct error.  Railroad now appeals.

## Discussion and Decision

[18] Railroad appeals the denial of its motion to correct error, which challenged the trial court's denial of its motion for judgment on the evidence.[4] In general, we review a ruling on a motion to correct error for an abuse of the trial court's discretion. *B.A. v. D.D.*, 189 N.E.3d 611, 614 (Ind. Ct. App. 2022), *trans. denied*. An abuse of discretion occurs if the court's decision was clearly against the logic and effect of the facts and circumstances, or it misinterpreted the law. *Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 410 (Ind. 2025). Further, in reviewing the trial court's ruling on a motion to correct error, we also "consider[] the standard of review for the underlying ruling." *B.A.*, 189 N.E.3d at 614. In this case, the underlying ruling was the denial of the motion for judgment on the evidence.

[19] Trial Rule 50 governs a motion for judgment on the evidence, also known as a motion for a directed verdict. This type of motion tests the legal sufficiency of the evidence. *Scholl v. Majd*, 162 N.E.3d 475, 479 (Ind. Ct. App. 2020), *trans. denied*. A party may move for judgment on the evidence "at the close of the plaintiff's case if all or some of the issues are 'not supported by sufficient evidence.'" *Cosme v. Clark*, 232 N.E.3d 1141, 1148 (Ind. 2024) (quoting Ind. Trial Rule 50(A)). Whether a party is entitled to judgment on the evidence is a

---

[4] Throughout appellate briefing, and without explanation, Railroad cites the record in contravention of Indiana Appellate Rule 22(C). *See, e.g.*, Appellant's Br. p. 9 (citing "App.V" when the Appendix does not contain five volumes and the cited content was contained in the fifth volume of the Transcript).

question of law subject to de novo review.  *Id.* at 1152 (noting that "[t]he paper record alone is enough" to assess the propriety of judgment on the evidence).

At the directed-verdict stage, courts do not weigh evidence or assess witness credibility, "reserv[ing] the fact-finding function to juries."  *Id.* at 1149.  Instead, courts view the evidence in a light most favorable to the nonmovant.  *Id.* at 1150.  In general, a Trial Rule 50 motion "ha[s] the same goal" as a summary judgment motion—to "withdraw[] issues from the jury when there are no factual issues for [it] to decide."  *Id.*  In short: "Summary judgment is available when the nonmovant *cannot prove* its claim based on the undisputed evidence. Judgment on the evidence (directed verdict) is available when the nonmovant *has not proved* its claim because no reasonable jury could find for it."  *Id.* (replaced bold emphasis with italicization).  "Thus, just as a self-serving affidavit can defeat summary judgment, . . . so too can the same self-serving trial testimony defeat a directed verdict."  *Id.* at 1150–51.

## I.   Preclusion

Below, Railroad argued it was entitled to judgment on the evidence as to any claim premised on a crew-size theory of negligence.[5]  Railroad maintained that federal law precluded this type of claim, and therefore, any claim involving this negligence theory should have been withdrawn from the jury's consideration.

---

[5] Given the content on this issue in Railroad's motion for judgment on the evidence and its subsequent motion to correct error, we disagree with Employee's assertion that Railroad failed to preserve this challenge.

Below and on appeal, Railroad focuses on provisions of FRSA and FELA. In this decision, we follow *POM Wonderful* and ultimately harmonize FRSA and FELA, rather than interpret FRSA (the regulatory statute) as precluding claims under FELA (the statute providing a private right of action to railroad workers).

[22] To resolve this appeal, we must engage in statutory interpretation. We interpret statutes de novo. *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). In doing so, our primary goal is to ascertain and give effect to legislative intent. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). The best evidence of that intent is the statutory language. *Id.* When that language is clear and unambiguous, we simply apply its plain and ordinary meaning. *Id.* Further, we read statutes as a whole. *ESPN*, 62 N.E.3d at 1195. If possible, we give effect to every word, avoiding interpretations that render part of the statute meaningless. *Id.* at 1199. Further, as we interpret a statute, we remain mindful of "what it 'does say' and what it 'does not say.'" *Mi.D. v. State*, 57 N.E.3d 809, 812 (Ind. 2016) (quoting *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)).

[23] It is undisputed that Employee brought this action under FELA, a federal law that "creates a negligence action for railroad employees injured in the scope of their employment . . . ." *DeHahn v. CSX Transp.*, 925 N.E.2d 442, 446 (Ind. Ct. App. 2010). Under FELA, "plaintiffs must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation." *Id.* at 447. However, the "existence of negligence under FELA is a question of federal law, not state law." *Id.* Here, it is generally undisputed that Railroad complied with FRSA in having a one-man crew. Railroad argues that

because federal regulations adopted pursuant to FRSA ultimately allow for one-man RCO crews, Railroad cannot be negligent for having a one-man RCO crew. *See* Appellant's Br. pp. 21–22. Put differently, Railroad argues that FRSA precludes any FELA claim premised on a crew-size theory of negligence. It is worth noting that the term "preclusion" refers to instances when one federal statute bars a claim under another federal statute. *See generally DeHahn*, 925 N.E.2d at 448 n.5. In contrast, "preemption" refers to instances when federal law bars a state-law claim. *See generally, e.g.*, *id.* at 448, 448 n.5.

[24] Congress specified that the purpose of FRSA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. FRSA empowers the Secretary of Transportation to prescribe regulations for "every area of railroad safety. . . ." 49 U.S.C. § 20103(a). FRSA also provides that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a).[6] Injured parties do not have a federal cause of action under FRSA. 49 U.S.C. § 20106(c). However, FELA establishes a cause of action for injured railroad employees, specifying that a railroad carrier "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce"

---

[6] Employee points out that subsection (a) is within a section titled "Preemption," suggesting that FRSA's uniformity mandate is limited to the preemption of inconsistent state laws. It is worth noting, however, that subsection (c) speaks to a federal issue, which is whether FRSA establishes a federal cause of action. Regardless, to resolve this case, we need not interpret subsection (a) as strictly limited to matters of state law.

for "such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51.

[25] Railroad focuses on the FRSA provision regarding national uniformity in railroad safety regulation, arguing that "FRSA's uniformity mandate encompasses other federal laws." Appellant's Br. p. 25. Railroad directs us to a pre-*POM Wonderful* case indicating that "the uniformity demanded by . . . FRSA can be achieved only if federal rail safety regulations are applied . . . to a FELA plaintiff's negligence claim." Appellant's Br. p. 27 (quoting *Nickels v. Grand Trunk W. R.R.*, *Inc.*, 560 F.3d 426, 430 (6th Cir.)). Under Railroad's reading of the law, FRSA does not preclude all FELA claims. Rather, a claim "can proceed" if "there is no federal safety standard covering the matter" or "if the railroad breaches such a standard . . . ." *Id.* at 28. Here, Railroad argues there was a crew-size regulation adopted pursuant to FRSA.[7] According to Railroad, that regulation establishes the only applicable standard of care. Railroad argues that, "as a matter of law, there can be no negligence—and thus no viable FELA claim—if the railroad has complied with the standard of care

---

[7] On appeal, Employee argues that, while a FRSA regulation authorized the use of RCOs, there was no regulation governing crew size. Employee did not present this argument at trial, instead agreeing with Railroad that it was "permitted by federal law to have a single RCO doing all this work . . . ." Tr. Vol. 2 p. 127. Employee further argued that "[w]hether they're permitted to or not by law is not the issue" in that a jury could find that using a one-man RCO crew at a busy railyard is "not what a reasonably safe railroad would do." *Id.* at 128. In any case, we need not address Employee's appellate argument in light of our conclusion herein that FRSA and FELA are complementary statutes that do not result in federal preclusion.

set by on-point federal safety rules" like the crew-size rule. *Id.* (emphasis removed).

[26] Employee responds that FRSA and FELA are complementary such that a FRSA-derived regulation permitting a one-person crew would not preclude a claim that Railroad was negligent in operating with a one-person crew under the circumstances. Employee argues that *POM Wonderful* guides our analysis. *POM Wonderful* involved allegations that a beverage producer misled consumers into believing its product predominantly consisted of a juice blend referenced in prominent text on the label, when the referenced juices actually made up only 0.6% of the product. 573 U.S. at 110. The plaintiff—a competitor in the juice business—claimed the producer engaged in unfair competition under the Lanham Act, which prohibits false or misleading product descriptions. *See id.* at 106. The producer responded that the claim was precluded by the Federal Food, Drug, and Cosmetic Act ("the FDCA"), which forbids the misbranding of food, including through false or misleading labeling. *See id.* The Supreme Court was asked to decide the preclusion issue. *See id.* The Court applied "traditional rules of statutory interpretation," *id.* at 112, to conclude that the FDCA and the Lanham Act "complement[ed] each other in major respects," *id.* at 115, and that both could be fully implemented at the same time, *id.* at 119.

[27] The Court observed that, under the FDCA, "[p]rivate parties may not bring enforcement suits." *Id.* at 109. Rather, "[t]he FDCA statutory regime is designed primarily to protect the health and safety of the public at large," *id.* at 108, with the United States having "nearly exclusive enforcement authority,"

*id.* at 109. In contrast, the Lanham Act "relies in substantial part for its enforcement on private suits brought by injured competitors . . . ." *Id.* The Court ultimately reviewed both statutory schemes and determined that "[t]here [was] no statutory text or established interpretive principle to support the contention that the FDCA precludes Lanham Act suits like the one brought . . . in th[e] case." *Id.* at 106. The *POM Wonderful* Court specifically observed that "[n]othing in the text, history, or structure of the FDCA or the Lanham Act show[ed] the congressional purpose or design to forbid these suits." *Id.* Based on its reading of the federal laws, the Court concluded that "Congress did not intend the FDCA to preclude Lanham Act suits" like the suit at issue. *Id.* at 121. The Court also noted that the FDCA and the Lanham Act coexisted for seventy years, "[y]et Congress did not enact a provision addressing the preclusion of other federal laws that might bear on food and beverage labeling." *Id.* at 114. The Court found that this was "powerful evidence" that the claim was not precluded. *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 575 (2009)).

[28] Here, the parties agree that there is no binding precedent as to FRSA/FELA preclusion in the wake of the *POM Wonderful* decision. Although there is no binding precedent, we derive insight from the Louisiana Supreme Court's recent approach in *Van Buren v. Kansas City Southern Railway Company*, 421 So. 3d 910 (La. 2025). The *Van Buren* Court collected cases and explained that "the majority of state and federal courts that have applied the [United States Supreme Court's] reasoning post-[*POM*]*Wonderful* . . . find [that] FRSA does not preclude FELA actions." 421 So. 3d at 915. Courts have pointed out that

the regulations adopted under FRSA established *minimum* safety requirements. *See, e.g.*, 49 C.F.R. § 218.1 (setting forth "minimum requirements for railroad operating rules and practices"). Establishing minimum safety requirements—in other words, a baseline standard of care—aligns with FRSA's purpose, which is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Courts have concluded that this safety-promoting purpose is "entirely consistent with FELA's goal of promoting the safety of railroad employees by facilitating their ability to recover for injuries caused by a railroad's negligence." *Van Buren*, 421 So. 3d at 916 (quoting *Norfolk S. Ry. Co. v. Hartry*, 837 S.E.2d 303, 309 (Ga. 2019)).

[29] The *Van Buren* Court also pointed out that—like the federal laws at issue in *POM Wonderful*—FRSA and FELA have co-existed for decades without the legislature intervening to address the preclusion of federal law involving railroad safety. *Id.* at 917. In the end, the majority reading of FRSA and FELA is that the statutes are "complementary in purpose and effect." *Noice v. BNSF Ry. Co.*, 383 P.3d 761, 771 (N.M. 2016). As one reviewing court put it:

> Both statutes further railroad safety in meaningfully distinct ways. FRSA seeks to enhance safety in every area of railroad operation, and to protect the public as well as railroad workers. It does so with national, comprehensive regulatory standards which are enforced by government entities. FELA, by comparison, focuses solely on the safety of railroad workers, and does so by providing railroad employees a private right of action.

*Id.* (citations omitted). Furthermore, permitting these types of FELA claims "is likely to enhance the overall safety of railroad operation," which is consistent with FRSA's stated purpose. *Id.* Additionally, "FELA claims may shed light upon potentially dangerous circumstances that regulators might otherwise not identify or that are less amenable to uniform, regulatory solutions." *Id.*

[30] For the reasons articulated in *Van Buren* and supporting cases cited therein, which addressed substantially the same arguments Railroad now presents, we reject Railroad's proffered reading of federal law. We find that FRSA does not preclude Employee's FELA claim, which is that, regardless of whether federal authority allowed a one-man RCO crew, Railroad was negligent in its use of a one-man RCO crew under the circumstances. Having determined that FRSA does not preclude Employee's FELA claim, we conclude that Railroad was not entitled to judgment on the evidence as to a crew-size theory of negligence. We, therefore, conclude that, as to this crew-size theory, the trial court properly denied Railroad's Trial Rule 50 motion and subsequent motion to correct error.

## II. Damages

[31] Railroad next argues that "the judgment below cannot stand because the trial court improperly allowed [Employee] to seek damages unsupported by any evidence." Appellant's Br. p. 43. Railroad maintains that "no competent evidence showed that [Employee] is totally disabled." *Id.* Railroad points out that it "sought to exclude improper evidence on this point during trial," later "moved for a directed verdict on this ground," and eventually filed a post-trial

motion to correct error "mov[ing] for a new damages trial, with or without remittitur, on this same basis." *Id.* Railroad asserts that "[t]he trial court erred by denying these motions." *Id.* On appeal, Railroad asks that, "because no competent evidence showed that [Employee] was totally disabled," we either (1) reverse and remand for a new trial on damages or (2) reverse and remand "with instructions to reduce the gross damages award by the amount of [Employee's] claimed future lost wages, $2,009,492 . . . ." *Id.* at 50.

[32] Railroad asks us to apply a de novo standard of review, focusing on whether the evidentiary support for the damages award was sufficient as a matter of law. *See id.* at 44–45. Indeed, Railroad argues that there was a "complete failure of proof on future wage loss." *Id*. at 48. However, Railroad's specific arguments at times relate to the *admissibility* of Gonzalez's expert opinion and Opp's calculations based on Gonzalez's report. *Cf., e.g.*, Reply Br. p. 7 (arguing that "hearsay does not become admissible just because the vocational expert repeated it" and, "[w]ithout a foundation in evidence," Gonzalez's opinion "is improper"). We note, however, that Railroad does not identify or apply the standard of review for issues involving the admissibility of evidence, focusing instead on whether the trial court should have "take[n] the lost-wages issue off the table with a directed verdict." Appellant's Br. p. 49; *see also* Reply Br. p. 9 (arguing that "no competent evidence supported [Employee's] claim that he can never work again"). The argument presented seems to be that (1) the trial court should have excluded testimony from Gonzalez and certain testimony from Opp, (2) had this testimony been excluded, Employee would not have met his

evidentiary burden as to future lost wages, and (3) in this scenario, Railroad would have been entitled to judgment on the evidence. *Cf.* Appellant's Br. pp. 44–45 ("Without [Gonzalez's] conclusion that [Employee] cannot work, then, no evidence supports his multi-million-dollar request for lost wages.").

[33] Critically, however, a motion for judgment on the evidence tests the legal sufficiency of the evidence presented. *E.g.*, *Scholl*, 162 N.E.3d at 479. It does not present an opportunity to revisit evidentiary rulings. *See generally Cosme*, 232 N.E.3d at 1150 (explaining that, akin to summary judgment, judgment on the evidence is proper if "there are no factual issues for the jury to decide" and a party is entitled to judgment as a matter of law). Here, Railroad relies on its Trial Rule 50 motion for judgment on the evidence, not its motion to exclude. In the end, we must address the appellate issues as presented to us, else we risk becoming an advocate instead of a neutral tribunal. *See, e.g.*, *Chapo v. Jefferson Cnty. Plan Comm'n*, 224 N.E.3d 971, 983 (Ind. Ct. App. 2023) ("We will not transform into a party's advocate and fashion arguments on their behalf."), *trans. denied*.

[34] In reviewing a motion for judgment on the evidence, our role is "to assess whether, without any weighing, the evidence supports any reasonable inference in favor of the nonmovant." *Cosme*, 232 N.E.3d at 1152. The same standard applies when a party seeks, through a motion to correct error, a determination that there is insufficient evidence under the law to support the verdict. *Indianapolis Pub. Transp. Corp. v. Bush*, 266 N.E.3d 719, 726–27 (Ind. 2025).

[35] In this instance, we cannot say that, as a matter of law, there was insufficient evidence that Employee was completely vocationally disabled such that he sustained $2,009,429 in future lost wage damages—a figure calculated by Opp, the expert economist.[8] The vocational rehabilitation expert, Gonzalez, testified in detail about the grounds for her vocational opinion, including "information from Dr. Jordan," who "said [Employee] was permanently disabled from his regular . . . occupation" and "has cognitive challenges that lead to lapses in memory and concentration." Tr. Vol. 3 p. 68. Independent of Gonzalez's testimony about the content of the medical records, there was testimony from Dr. Jordan that Employee experienced permanent neurological symptoms due to brain injury caused by the train collision. *See* Appellant's App. Vol. 2 p. 48. Dr. Jordan opined that Employee needed "lifelong strategies . . . to help manage his life" and had "chronic persisting symptoms" that he thought Employee "w[ould] have to manage on some level indefinitely." *Id.* at 49. Furthermore, there was additional evidence bearing on the scope of Employee's brain injury, as the otolaryngologist testified about permanent bilateral tinnitus.

[36] For the foregoing reasons, we find there was sufficient evidence of lost wage damages such that Railroad did not meet the requirements of Trial Rule 50.

---

[8] To the extent Railroad has claimed the verdict was against the weight of the evidence, based on the trial court's remarks as to Gonzalez's vocational expertise, we cannot say it erred in declining to disturb the verdict. *See Indianapolis Pub. Transp. Corp. v. Bush*, 266 N.E.3d 719, 726–27 (Ind. 2025) (discussing theories available in a Trial Rule 59(J) motion to correct error, where a party may claim the verdict was either against the weight of the evidence or clearly erroneous as contrary to or not supported by the evidence).

## Conclusion

Because FRSA does not preclude Employee's FELA claim and because the record contains evidentiary support for Employee's claim for future wage loss damages, Railroad has not identified grounds to disturb the judgment.

Affirmed.

May, J. and Altice, J., concur.

ATTORNEYS FOR APPELLANT

Barry L. Loftus
James F. Olds
Stuart & Branigin LLP
Lafayette, Indiana

Tobias S. Loss-Eaton
Charles W. Jetty
Sidley Austin LLP
Washington, D.C.

ATTORNEYS FOR APPELLEE

Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana

George Brugess
Cogan & Power, PC
Chicago, Illinois

Mark A. Psimos
Nathan M. Psimos
Psimos Law
Merrillville, Indiana